**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **JANICE HUGHES BARNES, INDIVIDUALLY** | § | |
| **AND AS A REPRESENTATIVE OF THE** | § | |
| **ESTATE OF ASHTIAN BARNES, DECEASED;** | § | |
| **and TOMMY DUANE BARNES** | § | |
| *Plaintiffs* | § | |
| | § | |
| **VS.** | § | **C.A. NO.: 4:18-CV-00725** |
| | § | |
| **ROBERTO FELIX, JR.,** | § | |
| **AND THE COUNTY OF HARRIS, TEXAS** | § | |
| *Defendants.* | § | |

**DEFENDANTS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT**

OF COUNSEL:

VINCE RYAN
HARRIS COUNTY ATTORNEY

**/S/  Mary E. Baker**
MARY E. BAKER
Federal I.D. No. 7647
State Bar No. 08534000
Senior Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone:  (713) 274-5133
Facsimile: (713) 755-8924
mary.baker@cao.hctx.net

CAMERON A. HATZEL
Assistant County Attorney
Texas Bar No. 24074373
Federal ID No. 1128943
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5376
Facsimile: (713) 755-8924
Email: cameron.hatzel@cao.hctx.net

ATTORNEY FOR DEFENDANTS

# **TABLE OF CONTENTS**

Page

INDEX OF AUTHORITIES.................................................................. iv

I. Nature of the Case and Procedural History .........................................1

II. Summary of the Argument..............................................................3

III. Factual Background ....................................................................6

IV. Standard of Review....................................................................11

V.   Argument ...............................................................................11

   A.  Deputy Felix did not Violate Barnes' Fourth Amendment Rights ...................11

     1.   Use of Force Claim ..........................................................11

     2.  The Qualified Immunity Defense ...............................................13

       (a.) The Qualified Immunity Test and the Four Commandments for Deciding Qualified Immunity Cases ...................................................14

     3.  Deputy Felix is Entitled to Qualified Immunity on Plaintiffs' Use of Force Claim....15

   B.  Harris County is Entitled to Judgment as a Matter of Law on Plaintiff's Claims ............22

     1.  Section 1983 Generally.......................................................22

     1.  Harris County Cannot Be Held Liable on Plaintiff's Claims Against It Because Deputy Felix Did Not Violate Barnes' Constitutional Rights ...............24

     2.  Former Constable Camus Was Not A Policymaker for Harris County ................24

     3.  Harris County Is Entitled to Judgment as a Matter of Law on Plaintiffs' Failure To Supervise Claim…………………………………………………...26

     4.  Harris County Is Entitled to Judgment on Plaintiffs' Theory of Liability Entitled "Unlawful Policy by Acts of Official Policymaker" ...........................29

     5.  Harris County is Entitled to Judgment on Plaintiffs' Informal Custom Theory....30

     6.  Harris County Is Entitled to Judgment on Plaintiffs' Failure to Train Theory......31

7.   Harris County is Entitled to Judgment on Plaintiffs' Ratification Claim ..............33

8.   Harris County Is Entitled to Judgment on Plaintiffs' Torts Claim Act..................34

9.   Conclusion ...........................................................................................................34

CERTIFICATE OF SERVICE ...................................................................................35

**TABLE OF AUTHORITIES**

Page(s)

Cases

Anderson v. Liberty Loby, Inc.,
  477 U.S. 242 (1986) .......................................................................... 10, 11

Ashcroft v. Al-Kidd,
  563 U.S. 731 (2011) ................................................................................ 14

Backe v. LeBlanc,
  691 F. 3d 645 (5th Cir. 2012)................................................................. 13

Bennett v. City of Slidell,
  728 F. 2d 762 (5th Cir. 1984)............................................................ 25, 31

Board of County Comm'rs of Bryan County v. Brown,
  520 U.S. 397 (1997).................................................................... 22, 23, 28

Bowden v. Jefferson Cty,
  676 F. App'x 251 (5th Cir. 2017) ....................................................... 24, 25

Bowles v. Cheek,
  44 F. App'x 651 (5th Cir. 2002)............................................................. 26

Brosseau v. Haugen,
  543 U.S. 194 (2004)................................................................................ 15

Castro v. McCord,
  259 F. App'x 664 (5th Cir. 2007) ........................................................... 25

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986)................................................................................ 10

City of Los Angeles v. Heller,
  475 U.S. 796 (1986)................................................................................ 24

City of St. Louis v. Praprotnik,
  485 U.S. 112 (1988)........................................................................... 25, 33

Conner v. Travis Cty.,
  209 F. 3d 794 (5th Cir. 2000)................................................................. 28

Connick v. Thompson,
  563 U.S. 51, 131 S. Ct. 1350 (2011) ........................................... 27, 28, 32

Coon v. Ledbetter,
  780 F. 2d 1158 (5th Cir. 1986)............................................................... 33

Davidson v. City of Stafford, Tex.,
  48 F. 3d 384 (5th Cir. 2017)................................................................... 28

Davis v. Romer,
  600 Fed. Appx. 926 (5th Cir. 2015) ........................................... 19, 20, 22

Drain v. Galveston County,
  979 F. Supp. 1101 (S.D. Tex. 1997) .................................................. 26, 34

Ducket v. City of Cedar Park, Tex.,
  950 F. 2d 272 (5th Cir. 1992).................................................................. 11

Elliott v. Leavitt,
  99 F. 3d 640 (4th Cir. 1996).................................................................... 20

Estate of Davis v. City of North Richland Hills,
    406 F. 3d 375 (5th Cir. 2005)..................................................................... 13, 28
Fraire v. City of Arlington,
    957 F. 2d 1268 (5th Cir. 1992)........................................................................... 21
Frank v. Harris County,
    118 F. App'x 799 (5th Cir. 2004) ..................................................................... 26
Freeman v. Gore,
    483 F. 3d 404 (5th Cir. 2007).............................................................................11
Grandstaff v. City of Borger,
    767 F. 2d 161 (5th Cir. 1985).............................................................................. 33
Gremar v. Bexar County, Tex,
    No. SA-13-CV-434-XR, 2014 WL 906796 n. 1 (W.D. Tex. Mar. 7, 2014) ........... 26
Hall v. Robinson,
    618 F. App'x 759 (5th Cir. 2015) ..................................................................... 32
Hare v. City of Corinth, Miss.,
    74 F.3d 633 (5th Cir. 1996)............................................................................... 23
Harlow v. Fitzgerald,
    457 U.S. 800 (1982) .......................................................................................... 13
Harris County v. Nagel,
    349 S.W. 3d 769 (Tex. App.—Houston [14th Dist.] 2011, pet. denied.................... 25
Harris v. Serpas,
    745 F. 3d 767 (5th Cir. 2014)............................................................................ 21
Haywood v. Johnson,
    No. A-13-CA-355-SS, 2014 WL 4929311 (W.D. Tex. Oct. 1, 2014) .................... 32
Keenan v. Tejeda,
    290 F. 3d 252 (5th Cir. 2002)............................................................................ 26
King v. Handorf,
    821 F. 3d 650 (5th Cir. 2016)............................................................................ 13
Kisela v. Hughes,
    584 U.S. ___, 138 S. Ct. 1148 (2018) .............................................................. 15
Kitchen v. Dallas Cty., Tex.,
    759 F. 3d 468 (5th Cir. 2014).............................................................................. 27
Lewis v. Pugh,
    289 F. App'x 767 (5th Cir. 2008) ..................................................................... 28
Mace v. City of Palestine,
    333 F. 3d 621 (5th Cir. 2003)............................................................................ 12
Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) .......................................................................................... 11
McClendon v. City of Columbia,
    305 F. 3d 314 (5th Cir. 2002)............................................................................ 13
McMillian v. Monroe County, Ala.,
    520 U.S. 781 (1997) ..................................................................................... 24, 25
Meadowbriar Home for Children, Inc. v. Gunn,
    81 F.3d 521 (5th Cir. 1996)............................................................................... 23
Miller v. Graham,
    447 Fed. App'x 549 (5th Cir. 2011) ................................................................. 13

Monell v. Dept. of Social Services,
    436 U.S. 658, 131 S. Ct. 1350 (2011) ............................................................ 26

Morgan v. Swanson,
    659 F. 3d 359 (5th Cir. 2011) ........................................................................ 14

Morrow v. Meachum,
    917 F. 3d 870 (5th Cir. 2019) ................................................................... 14, 15

Mullenix v. Luna,
    ___U.S.___, 136 S. Ct. 305 (2015) ............................................................... 14

Parker v. Missouri City, No. 4:12:CV 2484,
    2015 WL 4431019 (S.D. Tex. July 17, 2015) ............................................... 32

Pearson v. Callahan,
    555 U.S. 223 (2009) ....................................................................................... 14

Pena v. Jimenez,
    31 F. App'x 833 (5th Cir. 2002)..................................................................... 26

Peterson v. City of Fort Worth,
    588 F. 3d 838 (5th Cir. 2009) ........................................................................ 27

Pineda v. City of Houston,
    291 F. 3d 325 (5th Cir. 2002)......................................................................... 28

Plumhoff v. Rickard,
    ___ U.S. ___, 134 S.Ct. 2012 (2014) ............................................................ 13

Ramirez v. Knoulton,
    542 F. 3d 124 (5th Cir. 2008)................................................................... 12, 20

Raymond v. Ector County, Tex.,
    507 F. App'x 347 (5th Cir. 2013) .................................................................. 25

Rhode v. Denson,
    776 F. 2d 107 (5th Cir. 1985)......................................................................... 26

Rios v. City of Del Rio,
    444 F. 3d 417 (5th Cir. 2006)......................................................................... 24

Scott v. Harris,
    550 U.S. 372 (2007) ....................................................................................... 13

Snyder v. Trepagnier,
    142 F.3d 791 (5th Circ. 1998)................................................................... 23, 33

Sorrells v. Warner,
    21 F. 3d 1109 (5th Cir. 1994) ........................................................................ 26

Tarver v. City of Edna,
    410 F. 3d 745 (5th Cir. 2005)......................................................................... 14

Tennessee v. Garner,
    471 U.S. 1 (1985) ........................................................................................... 11

Terry v. Ohio,
    392 U.S. 1, 88 S. Ct. 1868 (1968) ................................................................. 16

Thompson v. Mercer,
    762 F. 3d 433  (5th Cir. 2014)........................................................................ 21

Thompson v. Upshur County,
    245 F. 3d 447 (5th Cir. 2001).......................................................................... 27

Tolan v. Cotton,
    572 U.S. ____ (2014) ..................................................................................... 11

<u>Tonkin v. Harris County, Texas</u>,
   257 F. App'x 762 (5th Cir. 2007) ........................................................ 26
<u>United States v. Ibarra-Sanchez</u>,
   199 F. 3d 753 (5th Cir. 1999)................................................................. 16
<u>Valle v. City of Houston</u>,
   613 F. 3d 536 (5th Cir. 2010)........................................................... 28, 29
<u>Vondy v. Comm'rs Court of Uvalde County</u>,
   620 S.W. 2d 104 (Tex. 1981) ............................................................... 25
<u>Wilson v. Layne</u>,
   526 U.S. 603 (1999) ............................................................................. 13
<u>Zarnow v. City of Wichita Falls, Tex.</u>,
   614 F. 3d 161 (5th Cir. 2010)........................................................... 28, 32

Statutes

Tex. Civ. Prac. & Rem. Code, Section 101.001 ..................................... 2, 23
Tex. Civ. Prac. & Rem. Code 101.057 ...................................................... 34
Tex. Code of Crim P., Art. 2.12(2) ........................................................... 25
Tex. Const. art. V Section 24 .................................................................... 25
Tex. Const. Art. V, Section 18................................................................ 24, 25
Tex. Const. Art. XI, Section 1 ................................................................... 24
Tex. Loc. Gov't Code Section 87.013 ........................................................ 25
Tex. Occ. Code, Section 1701.151(2)......................................................... 32

Rules

Fed. R. Civ. P. 56.............................................................................. 1, 10

Defendants Harris County and Harris County Precinct 5 Deputy Constable Roberto Felix in his Individual Capacity ("Deputy Felix") (collectively "Defendants") now file this Consolidated Motion for Summary Judgment pursuant to Rule 56, Fed. R. Civ. P., and would respectfully show this Court as follows.

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Janice Hughes Barnes, Individually and as Representative of the Estate of Ashtian Barnes, Deceased and Tommy Duane Barnes ("Plaintiffs") originally filed this civil rights lawsuit in the 129th Judicial District Court of Harris County, Texas on December 29, 2017 against Defendants, who removed this case to this Court.  Plaintiffs' action arises out of Deputy Felix's use of deadly force against Ashtian Duane Barnes ("Barnes") on April 28, 2016 to stop the threat of death or serious bodily injury he reasonably perceived when Barnes, during the course of a valid traffic stop, placed the car in gear and began to leave the scene while Deputy Felix's body was partially inside the open driver's side door of the vehicle. As Barnes fled the scene, it reasonably appeared to Deputy Felix that the open car door had pinned him and that he might be dragged or otherwise injured or killed by the car. Presented with the necessity of making a split second decision, Deputy Felix exercised his discretion by jumping onto the car sill and holding on, so he wouldn't be run over or dragged. Deputy Felix had already drawn his duty weapon, which was still inside the vehicle.  Barnes ignored Deputy Felix's commands, "Don't fucking move!"  When Barnes ignored Deputy Felix's commands and continued to drive off, Deputy Felix was in fear of his life, potentially from being thrown from the vehicle and run over by traffic on the Sam Houston Tollway or being run over by the vehicle itself.  After feeling his weapon being moved and pressure on that weapon, Deputy Felix discharged his weapon once.  He sensed that the vehicle then sped up.  Fearing that Barnes could kill him or cause him serious bodily injury, Deputy Felix fired a

second time.  The vehicle then slowed down almost to a stop, Deputy Felix jumped off and held Barnes at gunpoint, immediately notifying Dispatch to send EMS to assist Barnes. Although CPR was begun by responding officers, Barnes was pronounced dead at the scene.

Plaintiffs allege that Deputy Felix used excessive force against Barnes in violation of his Fourth Amendment rights.  Plaintiffs also appear to allege that Deputy Felix's detention of Barnes was unlawful. Plaintiffs contend that Harris County is liable to them based on its alleged failure to supervise Deputy Felix, as well as on the theory that it maintained an unlawful policy as well as constitutionally deficient customs, policies and procedures regarding the use of force and/or unlawful detention.  Plaintiffs allege that Harris County failed to train and supervise Deputy Felix. Plaintiffs also contend that Harris County ratified the allegedly unconstitutional conduct of Deputy Felix.  Finally, Plaintiffs purport to bring a cause of action against Harris County pursuant to the Texas Tort Claims Act, Section 101.001, Tex. Civ. Prac. & Rem. Code.  Plaintiffs seek actual and compensatory damages, punitive damages, costs and attorneys' fees.

Defendants deny that Deputy Felix violated Barnes' Fourth Amendment rights, or that they are liable to Plaintiffs in any amount, under any theory.  Harris County denies it had a custom, policy or procedure of which a final Harris County policymaker had actual or constructive notice, which was the moving force of the alleged constitutional violation.  Harris County further denies that it failed to supervise or train Deputy Felix, or that it ratified any unconstitutional conduct by Deputy Felix. Harris County denies that it can be held liable under the Texas Tort Claims Act.  Deputy Felix asserts that at all relevant times hereto, he was within the scope of his authority as a peace officer, was performing a discretionary duty, and was acting in good faith.  He is, therefore, entitled to qualified immunity.

Discovery is complete.  The Court's deadline for the filing of dispositive motions is July 30, 2019.  The trial is set for October 29, 2019.

## II.      SUMMARY OF THE ARGUMENT

Deputy Felix's use of deadly force against Barnes on April 28, 2016 was justified and did not violate Barnes' Fourth Amendment rights.  Deputy Felix had been dispatched by the Harris County Toll Road Authority ("HCTRA") to locate a prohibited vehicle driving on the Sam Houston Toll Road.  The vehicle was prohibited as a result of toll violations.  Deputy Felix located the prohibited vehicle, made a valid traffic stop, and properly detained Barnes, the vehicle's driver.  Barnes informed Deputy Felix that the vehicle was a rental; he could not present a driver's license.   While he was speaking with Barnes, Deputy Felix smelled the strong odor of marijuana coming from the vehicle. Deputy Felix called for backup.  At this point, Barnes told Deputy Felix his driver's license might be in the trunk and told Deputy Felix he could look there if he liked.   Deputy Felix asked Barnes to pop the trunk, but he then opened the driver's side door and ordered Barnes to step out of the vehicle.  Instead of complying with the order, Barnes grabbed the keys and turned the vehicle on.  Deputy Felix drew his weapon and ordered Barnes something to the effect of "Don't do it." In a split second, Barnes' hand dropped down and he put the car in gear even though the left side of Deputy Felix's body was in the vehicle.   As Barnes began to leave the scene, disobeying Deputy Felix's orders not to move, the driver's side door immediately swung back into the left side of Deputy Felix's body.  Deputy Felix believed the door had pinned him, and that he was going to be seriously injured or possibly killed by being run over or dragged by the car.  Deputy Felix quickly jumped onto the door sill and held on so he would not get run over and dragged.

As Barnes drove off, Deputy Felix ordered Barnes twice: "Don't fucking move."  Barnes kept driving.  Deputy Felix's pistol was in his right hand, inside the vehicle.  He could feel his right hand being moved.  He could feel pressure on his gun.  At that point, fearing that he would be thrown from the vehicle or crushed by the retaining wall, he discharged his pistol once; it appeared to have no effect.  He fired a second time.  The vehicle slowed down almost to a stop, Deputy Felix jumped off and held Barnes at gunpoint.  Deputy Felix immediately got on the radio and said, "Shots fired.  Send HFD."

When Barnes refused Deputy Felix's order to step out of the vehicle and fled from the scene instead, Deputy Felix was faced with a situation which was dangerous, occurring very quickly and which presented him with the threat of serious bodily injury or death. He feared that he would be thrown from the vehicle or crushed by the retaining wall.  After using jumping onto the door sill, he ordered Barnes twice not to move, orders which Barnes completely disregarded.  When he felt his weapon being moved and pressure on his pistol, he discharged his weapon twice to stop the threat of death or serious bodily injury which Barnes' actions presented.

Deputy Felix did not violate Barnes' Fourth Amendment right to be free from an unlawful seizure, nor did he violate Barnes' right to be free from the use of deadly force.  Deputy Felix's stop of Barnes' vehicle was based on reasonable suspicion.  Deputy Felix's use of deadly force against Barnes, considering the totality of the circumstances, was completely justified.  At the time he discharged his pistol, Deputy Felix was in fear of death or serious bodily injury as a result of Barnes' actions.  Under well-established Fifth Circuit authority, Deputy Felix's actions did not violate the Fourth Amendment.  Because there was no constitutional violation, Deputy Felix is entitled to qualified immunity.

Harris County cannot be held liable under Section 1983 for Deputy Felix's use of deadly force. First, Deputy Felix did not violate Barnes' Fourth Amendment right to be free from an unlawful seizure or to be free from the use of excessive force. Absent a constitutional violation by Deputy Felix, Harris County, as a governmental entity, cannot be held liable for damages.

Even if Deputy Felix had violated Barnes' constitutional rights, which Harris County denies, Harris County cannot be held liable on the theories of liability asserted by Plaintiffs as a matter of law. There is no respondent superior liability under Section 1983. To hold Harris County liable under Section 1983, Plaintiffs must establish that a custom, policy or procedure of which a final Harris County policymaker had actual or constructive notice, was the moving force of the constitutional violation. However, former Harris County Precinct 5 Constable Phil Camus ("Constable Camus") is not a final policymaker for Harris County as a matter of law for purposes of Section 1983. Each of Plaintiffs' theories of liability must fail on that basis.

Even if former Constable Camus were a final policymaker for Harris County for purposes of Section 19983, which Harris County denies, Harris County cannot be held liable on Plaintiffs' failure to supervise and/or train claims. While a failure to train and/or supervise can amount to a policy if there is deliberate indifference to a need for training, it must have been obvious that the highly predictable consequence of not training or supervising its officers was that they would detain individuals or apply force in such a way that the Fourth Amendment rights of citizens were at risk. Plaintiffs cannot make this showing, as it generally requires at least a pattern of similar incidents in which citizens were injured, proof that is not present here. Further, with regard to Plaintiffs' failure to train theory of liability, the summary judgment evidence establishes that at all relevant times hereto, Deputy Felix had received state mandated training.

Plaintiffs' ratification claim must fail.  The Fifth Circuit has limited the theory of ratification to extreme factual situations, not present here.  Moreover, even if Deputy Felix's use of deadly force were determined to have violated the Fourth Amendment, which Harris County denies, and even if Constable Camus were a final policymaker for Harris County, which Harris County denies, if a supervisor defends his subordinates and those subordinates are later determined to have violated the law, the illegal behavior cannot be assumed to have resulted from an official policy.  Fifth Circuit authority forecloses ratification liability in this case for those reasons. Plaintiffs also raise a claim they entitle Unlawful Acts by Official Policymaker.  This claim appears to be a version of Plaintiffs' ratification claim and is contrary to Fifth Circuit authority.

Finally, Harris County cannot be held liable under the Texas Tort Claims Act.  It is undisputed that Deputy Felix's use of deadly force against Barnes was intentional.  Deputy Felix's use of deadly force cannot be both intentional and negligent at the same time.

For all of these reasons, Defendants are entitled to judgment as a matter of law on all of Plaintiffs' claims against them.

### III.     FACTUAL RECORD

On April 28, 2016, Deputy Felix was employed by the Harris County Precinct 5 Constable's Office as a traffic enforcement officer.  Deputy Felix received his Peace Officer License from the Texas Commission on Law Enforcement ("TCOLE") on September 29, 2004, after completing the Basic Peace Officer Academy at the University of Houston-Downtown Law Enforcement Academy in July, 2004.  While he attended the Basic Peace Officer Academy, Deputy Felix served as a detention officer at the Harris County Sheriff's Office.  Deputy Felix's position as a Precinct 5 traffic enforcement officer included the full range of traffic enforcement duties, including

stopping violators for speeding and other traffic violations and working minor, major and fatality accidents, as well as other traffic enforcement duties.  See Exhibit 1, pages 1-2.

At the time of this incident, Deputy Felix was performing his traffic enforcement duties on the Sam Houston Tollway.  He was wearing a Precinct 5 Constable's uniform and driving a marked Precinct 5 Constable's vehicle.  At approximately 2:40 pm that day, Deputy Felix heard a radio broadcast from the HCTRA dispatcher with regard to a prohibited vehicle, ie, one which is not allowed to drive on the Toll Road.    The HCTRA dispatcher provided Deputy Felix with the vehicle's description and license plate number, and Deputy Felix began looking for it. See Exhibit 1, page 2.

Deputy Felix spotted the vehicle driving on the Toll Road in the number one traffic lane.  He confirmed the license plate with Dispatch, and advised Dispatch of his location.  Deputy Felix caught up to the vehicle and initiated the traffic stop by activating the emergency lighting equipment on his vehicle.  The driver, later identified as Barnes, pulled to the left shoulder of the tollway and stopped adjacent to the cement divider separating the north and southbound lanes of the Toll Road.  See Exhibit 1, page 2.

Deputy Felix exited his vehicle and approached the Toyota Corolla, and began to speak to Barnes.  He informed Barnes of the reason for the stop, and requested his driver's license and proof of insurance.  Barnes indicated that he didn't have his driver's license and that the vehicle was a rental car.  Initially, Deputy Felix learned that Barnes had rented the vehicle a week earlier; then Barnes indicated that the vehicle was rented in his girlfriend's name. See Exhibit "1, page 2.

The traffic noise on the Toll Road was loud, so Deputy Felix leaned his head closer to the open driver's side door window of the Toyota Corolla to better hear what Barnes was saying.  Deputy Felix smelled the strong odor of marijuana coming from the vehicle, and requested that another

unit check by with him to assist him in the traffic stop, as he knew that he would have to remove Barnes from the vehicle for further investigation of the marijuana odor. Barnes kept reaching around the vehicle on the passenger's side and in the center console area. He grabbed a handful of papers and started to go through them, but he only flipped through them and didn't actually look at them. Barnes then reached over toward the passenger floorboard toward a red plastic cup that appeared to have trash in it. Deputy Felix ordered him, "Don't dig around." Barnes seemed very nervous to Deputy Felix. Barnes continued to fumble through the paperwork, causing Deputy Felix to repeat his request to stop digging around several times. Deputy Felix was concerned Barnes would access a weapon. Deputy Felix watched Barnes intently as he talked with him, to be alert to any potential threat. Barnes' behavior caused Deputy Felix to move his right hand onto the grip of his firearm. Barnes then reached over and turned off the ignition and placed the keys in the gear shift area. See Exhibit 1, page 2.

Deputy Felix then asked Barnes if he had anything in the vehicle he should know about because he smelled marijuana. Barnes indicated that there was not, but he reached toward the right front passenger's floorboard and seat, fumbling through papers while making eye contact with Deputy Felix instead of focusing on what he was looking for. Deputy Felix was concerned about his intentions. Barnes then indicated that his driver's license was in the trunk, and that Deputy Felix could get it if he wanted. See Exhibit 1, page 3.

Deputy Felix told Barnes to pop the trunk open to give him the impression that he intended to leave him seated in the vehicle while he checked the trunk. Deputy Felix then opened the driver's side door and told Barnes to step out. As he did so, Barnes immediately grabbed the keys and turned on the vehicle. Deputy Felix drew his weapon and said something to the effect of "Don't do it" as Barnes started to put the car in drive. See Exhibit 1, page 3.

8

In a split second,   Barnes' hand dropped down toward the gear shift and he put the car in drive even though the left side of Deputy Felix's body was in the vehicle.  As he put the car in drive, Barnes began to flee the scene.  As the Toyota accelerated, the driver's door immediately swung back into the left side of Deputy Felix's body.  At that time, Deputy Felix believed the car door had pinned him, because the left side of his body was within the vehicle trying to keep Barnes from putting the car in drive.  Deputy Felix believed he was going to be seriously injured or possibly even killed.  His initial reaction was that he was going to get run over or dragged by the car.  He quickly jumped onto the door sill of the Toyota and held on, so that he wouldn't get run over or dragged.  See Exhibit 1, page 3.

Deputy Felix's left arm and upper torso were out of the vehicle, trying to keep a grip on the windshield, fearing he would be thrown off.  Deputy Felix's right hand was still inside the vehicle, with his duty weapon drawn.  As Barnes drove off, Deputy Felix yelled, "Don't fucking move!" Barnes completely failed to comply with Deputy Felix's orders. See Exhibit 1, page 3.

Deputy Felix could not see inside the vehicle, but he could feel his right hand, holding his weapon, being moved and could feel pressure on his gun.  At that point, fearing that he would be thrown from the vehicle or crushed by the retaining wall, Deputy Felix discharged his pistol once, and it appeared to have no effect.  He sensed that the vehicle then sped up.  Fearing that Barnes could kill him by taking his weapon or crushing him, Deputy Felix fired a second time.  The vehicle then slowed almost to a stop, and Deputy Felix jumped off and held Barnes at gunpoint.  Deputy Felix immediately got on the radio and said, "Shots fired.  Send HFD."  He provided his location to Dispatch and then checked again to confirm that HFD was responding to provide Barnes with medical care. See Exhibit 1, page 3.  Other officers responded, as well as HFD, but Barnes was pronounced dead at the scene.  See Exhibit 3, pages 3 and 15.

Deputy Felix's use of deadly force against Barnes was thoroughly investigated by the Houston Police Department Homicide Bureau.  See Exhibit 3, generally.  The case was subsequently investigated by the Harris County District Attorney's Office, which presented the case to a Harris County grand jury.  Deputy Felix was no-billed. See Exhibit 1, pages 3 and 4. The Harris County Precinct 5 Constable's Office also conducted an Internal Affairs Investigation of the incident.  The incident was reviewed by the Precinct 5 Disciplinary Review Board, and no violation of procedure was found.  See Exhibit 2, page 2.

The Harris County Precinct Five Constable's Office does not maintain a training academy. Rather, it hires individuals who are already licensed as peace officers by TCOLE, a state agency which mandates training requirements.  Licensed peace officers in Texas have received the training required by TCOLE and have passed the TCOLE Exam.  See Exhibit 2.

The Harris County Precinct 5 Constable's Office maintains a Standard Operating Procedures Manual.  See Exhibit 4.   The Precinct 5 Standard Operating Procedures Manual contains Procedure Number 100.2.14 on Use of Force and Deadly Force.  This procedure was developed with serious consideration for the safety of both the deputies and the public, and with the knowledge that deputies must sometimes make split-second decisions in life and death situations.  The Precinct 5 Standard Operating Procedures Manual also contains a procedure with respect to Officer Involved Shootings, which address on scene issues immediately after the use of deadly force, investigative period post shooting interventions, and supervisors' responsibilities. See Exhibit 2 and Exhibits "1" and "2" attached thereto.

## IV.    STANDARD OF REVIEW

The standard for reviewing a motion for summary judgment is set out in Fed. R. Civ. P. 56, and in Celotex Corp. v. Catrett, 477 U.S. 317 (1986); see also Anderson v. Liberty Loby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).  "The mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247-48.  A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law.  Id. At 248.  The substantive law identifies which facts are "material".  Id.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Ducket v. City of Cedar Park, Tex., 950 F. 2d 272, 276 (5th Cir. 1992).  "Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson, 477 U.S. at 248.

## V.    ARGUMENT

### A.  Deputy Felix Did Not Violate Barnes' Fourth Amendment Rights

#### 1.  The Use of Force Claim

The use of deadly force is a seizure within the meaning of the Fourth Amendment. Tennessee v. Garner, 471 U.S. 1, 7 (1985).  To establish their use of force claim, Plaintiffs must establish that Barnes experienced: (1) an injury; (2) which resulted directly and only from the use of force which was clearly excessive to the need; and (3) the excessiveness of which was clearly unreasonable.  Poole v. City of Shreveport, 691 f. 3d 624, 628 (5th Cir. 2012), citing Ontiveros v. City of Rosenberg, 564 f. 3d 379, 382 (5th Cir. 2009)(citing Freeman v. Gore, 483 F. 3d 404, 410 (5th Cir. 2007).

11

"[W]hether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" Tolan v. Cotton, 572 U.S. ____ (2014), citing Graham v. Connor, 490 386, 396 (1989).   The determination of "reasonableness" under the Fourth Amendment is "not capable of precise definition or mechanical application…[but] requires careful attention to the facts and circumstances of each particular case…". Graham, Id., 490 U.S.at 396. In Graham, the Supreme Court identified some of the factors which the Court should consider in its determination as to whether the use of force was reasonable.  Those factors are:  "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether [the subject] is actively resisting arrest or attempting to evade arrest by flight." Graham, Id., 490 U.S at 396.  Case law identifies these as the "Graham factors".

In gauging the objective reasonableness of the force, the Court must balance "…the amount of force used against the need for force." Ramirez v. Knoulton, 542 F. 3d 124, 129 (5th Cir. 2008)(internal quotation marks and citations omitted).  The objective reasonableness of a particular use of force is to be determined "in light of the facts and circumstances confronting the officer". Graham, Id. 490 U.S. at 396.

The Fifth Circuit has held that an officer's use of deadly force is presumptively reasonable when the officer has reason to believe the suspect poses a threat of serious harm to himself or others.  Ontiveros, Id., 564 F. 3d at 382, citing Mace v. City of Palestine, 333 F. 3d 621, 624 (5th Cir. 2003).

The test for whether excessive force was used by a police officer is an objective one.  The question is whether a reasonable officer would believe that this level of force is necessary in the situation at hand.  Graham, Id., 490 U.S. at 396.  The Supreme Court emphasized in Graham that "the calculus of reasonableness must embody allowance for the fact that police officers are often

12

forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation". Graham, Id., 490 U.S. at 396.  Finally, the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. See Plumhoff v. Rickard, ___ U.S. ___, 134 S.Ct. 2012, 2020 (2014).

## 2.  The Qualified Immunity Defense

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Estate of Davis v. City of North Richland Hills, 406 F. 3d 375, 380 (5th Cir. 2005)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'"  Scott v. Harris, 550 U.S. 372, 376 n. 2 (2007). "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 614 (1999).

Once raised by Deputy Felix, Plaintiffs have the burden to negate the assertion of qualified immunity.  King v. Handorf, 821 F. 3d 650, 653 (5th Cir. 2016); Estate of Davis, Id., 406 F. 3d at 380 ("We do not require that an official demonstrate that he did not violate clearly established rights; our precedent places that burden upon the plaintiffs."); McClendon v. City of Columbia, 305 F. 3d 314, 323 (5th Cir. 2002)(en banc) ("When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense.")  A court must first find "that the Plaintiff's pleadings assert facts which, if true, would overcome the defense of

13

qualified immunity. <u>Backe v. LeBlanc</u>, 691 F. 3d 645, 648 (5th Cir. 2012). "[C]onclusory allegations and unsubstantiated assertions' cannot overcome the defense." <u>Miller v. Graham</u>, 447 Fed. App'x 549, 551 (5th Cir. 2011). Stated another way, "[w]hen considering a defendant's entitlement to qualified immunity, [a court] must ask whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law]. <u>Morgan v. Swanson</u>, 659 F. 3d 359, 371 (5th Cir. 2011)(en banc), quoting <u>Ashcroft v. Al-Kidd</u>, 563 U.S. 731, 741 (2011). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. <u>Tarver v. City of Edna</u>, 410 F. 3d 745, 750 (5th Cir. 2005). "To answer that question in the affirmative, [the court] must be able to point to controlling authority—or a robust consensus of persuasive authority' that defines the contours of the right in question with a high degree of particularity.' <u>Morgan, Id.</u>at 371-372.

**(a) The Qualified Immunity Test and the Four Commandments for Deciding Qualified Immunity Cases**

The Fifth Circuit has defined the qualified immunity test as follows:

> Qualified immunity includes two inquiries. The first question is whether the officer violated a constitutional right. The second question is whether the "right at issue was 'clearly established' at the time of [the] alleged misconduct." <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009). We can decide one question or both. <u>Morrow v. Meachum</u>, 917 F. 3d 870, 872 (5th Cir. 2019).

The Fifth Circuit has noted that the second inquiry, on which the Plaintiff bears the "heavy" burden of proof, is a particularly difficult challenge. <u>Id</u>. There are, however, "four commandments" applicable to the resolution of whether the constitutional right is "clearly established" at the time of the alleged misconduct. <u>Id</u>. The "four commandments" distilled from the case law are as follows:

*"The constitutional question must be framed with specificity and granularity."  Here, "[t]he dispositive question is whether the violative nature of particular conduct is clearly established." Mullenix v. Luna, ___U.S.___, 136 S. Ct. 305, 308 (2015); however, "qualified immunity is inappropriate only where the officer had "fair notice'—"in light of the specific context of the case, not as a broad general proposition"—that his particular conduct was unlawful."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

*"Second, clearly established law comes from holdings, not dicta."  In short, "officers are charged with knowing the results of [civil rights] cases" but "are not charged with memorizing every jot and tittle [written] to explain them."

*"Third, overcoming qualified immunity is especially difficult in excessive-force cases." Consequently, "officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue.  Kisela v. Hughes, 584 U.S. ___, 138 S. Ct. 1148, 1153 (2018).

*"The fourth and final commandment is we must think twice before denying qualified immunity' because the Supreme Court of the United States routinely finds that cases involving the denial of qualified immunity are so "manifestly incorrect" that the Supreme Court routinely wields the extreme remedy of summary reversal on them. Morrow, 917 F. 3d at 872-74.  These "four commandments" oftentimes militate toward a finding that the government officials are entitled to qualified immunity

### 3.  Deputy Felix is Entitled to Qualified Immunity on Plaintiffs' Use of Force Claim

Deputy Felix is entitled to qualified immunity on Plaintiffs' claim that his use of deadly force against Barnes on April 28, 2016 violated Barnes' Fourth Amendment rights.  Deputy Felix is entitled to qualified immunity because at the time he used deadly force, Deputy Felix was faced

with a situation which was dangerous, occurring very quickly and which presented Deputy Felix with the threat of serious bodily injury or death by being run over or dragged by Barnes' vehicle.

As set out in the Factual Record, Deputy Felix's stop of the Toyota Corolla driven by Barnes on April 28, 2016 was a valid traffic stop, based on the information received from the Toll Road dispatcher that Barnes was driving a prohibited vehicle. Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968); See Exhibit 5 and Exhibit "1" attached thereto, pages 15-18.  As he talked to Barnes, Deputy Felix smelled the strong odor of marijuana coming from the vehicle, and he requested that another vehicle check by to assist as he knew he would have to remove Barnes from the vehicle to search it. United States v. Ibarra-Sanchez, 199 F. 3d 753 (5th Cir. 1999).  During the stop, Barnes kept reaching around the vehicle, on the passenger's side and in the center console area.  He grabbed a handful of papers and started to go through them, but only flipped through them and did not actually look at them.  Barnes seemed very nervous.  He continued to fumble through paperwork, causing Deputy Felix to repeat his request to stop digging around several times. Deputy Felix watched Barnes intently as he talked with him, to be alert to any potential threat. Barnes' behavior caused Deputy Felix to move his right hand onto the grip of his firearm.  Barnes then reached over and turned off the ignition and placed his keys in the gear shift area.  See Exhibit 1, page 2.

Deputy Felix then asked Barnes if he had anything in the vehicle he should know about, because he smelled marijuana.  Barnes indicated that there was not, but he reached toward the right passenger's floorboard and seat, fumbling through papers while making eye contact with Deputy Felix instead of focusing on what he was looking for.  Deputy Felix was concerned about Barnes' intentions.  See Exhibit 1, page 2.

16

Barnes then indicated that his driver's license was in the trunk, and that Deputy Felix could feel free to get it if he wanted to. Deputy Felix told Barnes to pop the trunk open to give him the impression that he intended to leave him seated in the vehicle while he checked the trunk. Instead, Deputy Felix opened the driver's side door and told Barnes to step out. As Deputy Felix did so, Barnes immediately grabbed his keys and turned on the vehicle. Deputy Felix drew his weapon and told him something to the effect of "Don't do it." as Barnes started quickly to put the car in drive. See Exhibit 1, page 3.

What took place next happened in a split second. Barnes put the car in drive as the left side of Deputy Felix's body was inside the vehicle. Barnes started to drive off. As the Toyota accelerated from the scene, the driver's door immediately swung back into the left side of Deputy Felix's body. At that time, Deputy Felix believed the car door had pinned him because his body was within the vehicle trying to keep him from putting the car in drive. See Exhibit 1, page 3.

With the door apparently pinning him, Deputy Felix feared that the Toyota would either run him over or drag him, in either case, resulting in death or serious bodily injury. He quickly jumped onto the door sill and held on, so he wouldn't get run over or dragged. Deputy Felix's left arm and upper torso were out of the vehicle trying to keep a grip on the windshield, fearing he would be thrown off. Deputy Felix's right hand was still inside the vehicle, with his duty weapon drawn. As Barnes drove off, Deputy Felix yelled, "Don't fucking move." He yelled that twice, but Barnes completely ignored his commands and kept driving. See Exhibit 1, page 3.

Deputy Felix was unable to see anything inside the vehicle, but he could feel his right hand, holding his weapon, being moved and could feel pressure on his weapon. At that moment, fearing he would be thrown from the vehicle or crushed by the retaining wall, Deputy Felix discharged his pistol once. He evaluated, and it appeared to have no effect. Deputy Felix then sensed that the

vehicle sped up.  Fearing that Barnes could kill him by taking his weapon or crushing him, Deputy

Felix fired a second time.  The vehicle then slowed down almost to a stop.  Deputy Felix jumped

off and held Barnes at gunpoint.  Deputy Felix immediately got on the radio and said, "Shots fired.

Send HFD."  Deputy Felix provided his location to Dispatch and then checked again to be sure

HFD was responding to provide Barnes with medical care.  Deputy Felix continued to hold Barnes

at gunpoint until a secondary unit arrived to assist.  That unit and Deputy Felix maintained Barnes

at gunpoint until a third unit arrived.  Deputy Felix then holstered his pistol and stood to the side,

as he was feeling leg pain.  When additional units arrived, he went back to his patrol vehicle, per

policy.  See Exhibit 1, page 3.

When Barnes refused Deputy Felix's order to step out of the vehicle, put the key back in

the ignition and began to flee the scene, Deputy Felix was faced with a situation which was not

only extremely dangerous, but which was occurring very quickly.   Deputy Felix reasonably

believed that Barnes' actions could result in death or serious bodily injury to him.  The outcome

was tense and uncertain and the situation rapidly evolving.  When the Toyota's driver's side door

swung back into the left side of his body as he was on the door sill, Deputy Felix feared that he

would be seriously injured or possibly even killed by being run over or dragged by Barnes' vehicle.

Deputy Felix discharged his firearm twice to stop the threat of death or serious bodily injury which

Barnes' actions presented.  Deputy Felix's use of deadly force was reasonable.  See Exhibit 5 and

Exhibit "1" attached thereto, pages 44-50.

Deputy Felix was not the only one who believed he might be seriously injured or killed as

a result of Barnes' conduct.  Maria Mora was the Toll Road Dispatch supervisor at the time of this

incident.  As Ms. Mora was coming on duty, she noticed the interaction on the Toll Road camera

between Deputy Felix and Barnes.  She observed Deputy Felix standing inside the open driver's

side door, observed the vehicle take off and observed Deputy Felix trying to hold on.  She believed Deputy Felix might be killed by being run over by the vehicle.  See Exhibit 6, page 2.

Plaintiffs allege that Deputy Felix's use of deadly force against Barnes was unreasonable. Plaintiffs also contend that Deputy Felix engaged in other conduct which violated Barnes' Fourth Amendment rights. See Plaintiffs' Original Petition.   Those allegations fall into two main categories:  that Deputy Felix fired into a moving vehicle in contravention of allegedly widely accepted police practices; and that Deputy Felix essentially created the necessity to use deadly force by "resorting to deadly force to apprehend a non-violent suspect rather than simply stepping out of the way."  See Plaintiffs' Original Petition, pages 22 and 23.   Both of these theories are without merit.

Defendants disagree that Deputy Felix fired into a moving vehicle.  It is undisputed that Deputy Felix intentionally fired at Barnes, the driver of a vehicle, as a result of his fear of death or serious bodily injury which resulted solely from the actions Barnes took in response to a valid traffic stop.

Even if Deputy Felix had fired into a moving vehicle, however, that conduct does not violate the constitution per se.  The Fifth Circuit has addressed this issue in Davis v. Romer, 600 Fed. Appx. 926 (5th Cir. 2015)(unpublished).

In Davis, the Fifth Circuit addressed the use of deadly force by Fort Worth police officers, who attempted to remove Charal Thomas ("Thomas") from his vehicle to arrest him on a misdemeanor warrant.  Standing by the driver's door, the officer informed Thomas they were going to arrest him and requested that he exit his vehicle.  Thomas refused, and the officer attempted to open the driver's side door.  Officer Romer reached inside Thomas' vehicle through the driver's side window in an attempt to unlock the door.  With Officer Romer's arm inside the

vehicle, Thomas started driving to the left toward the exit of the parking lot and then onto the service road alongside the freeway.  When the vehicle started moving, Officer Romer jumped on the running board.  Although both Officer Davis and Officer Romer were both shouting for Thomas to stop the vehicle, he continued driving.  As the vehicle was traveling on the highway's service road, Romer, who was standing on the vehicle's running board, pulled his gun from the holster and fatally shot Thomas.  See Davis, Id.

Like this case, Appellants in Davis contended that Officer Romer himself caused the danger by jumping on the running board of the vehicle, instead of moving away from the fleeing vehicle.  The Fifth Circuit dismissed this argument, characterizing it as "…unfortunately, a suggestion more reflective of the 'peace of a judge's chambers' than of a dangerous and threatening situation on the street.", citing Ramirez v. Knoulton, 542 F. 3d 124, 130 (5th Cir. 2008), quoting Elliott v. Leavitt, 99 F. 3d 640, 643 (4th Cir. 1996). Plaintiffs' argument to that effect must be dismissed in this case as well.  In Davis, Officer Romer's arm was inside the vehicle when Thomas began driving away, just as Deputy Felix's body was inside the vehicle when Barnes began driving away.  In Davis, the evidence indicated that Thomas' driving away with Officer Romer's arm inside the vehicle and Officer Romer subsequently jumping on the vehicle's running board occurred very rapidly, as did the incident with Deputy Felix.  The Fifth Circuit held in Davis that the "…definitive question is whether Romer had a reasonable belief that Thomas posed a risk of serious harm at the time [Officer] Romer used deadly force.  Appellants have conceded that [Officer] Romer was on the running board of the fleeing vehicle when he fired the fatal shots.  We therefore conclude that at the time of the shooting, Romer had reason to believe that there was a serious threat of physical harm to him."  Davis, Id.  The same is true here.  At the time of the shooting, Deputy Felix had reason to believe there was a serious threat of physical harm to him.

Thus, instead of clearly established authority that Deputy Felix's use of deadly force in this manner was prohibited, there is authority that nearly precisely the same situation presented a serious threat of physical harm to him, justifying the shooting.

Here, Plaintiffs contend that Deputy Felix's conduct prior to his use of deadly force led to the necessity to use deadly force.  The Davis plaintiffs made the same contention.  This contention was soundly rejected in Davis, citing Thompson v. Mercer, 762 F. 3d 433 436 (5th Cir. 2014).  The Thompson Plaintiffs argued that the officers created the danger requiring the use of deadly force in their attempts to intercept the fleeing vehicle driven by the subject.  Holding that this argument was "wholly without merit", the Fifth Circuit explained that the question is not whether the force would have been avoided if law enforcement had followed some other police procedures.  Instead, the Court explained that "regardless of what had transpired up until the shooting itself, the question is whether the officer [had] reason to believe, at that moment, that there was a threat of physical harm." Id.(citations and quotations marks omitted)(alteration in original).  The Court concluded that it was the fleeing driver and not the officer "who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight that ultimately produced the choice that [the officer] had to make.  Id.  (citation and internal quotation marks omitted).  See also Harris v. Serpas, 745 F. 3d 767, 772 (5th Cir. 2014)(explaining that "any of the officers' actions leading up to the shooting are not relevant for the purposes of an excessive force inquiry in this Circuit."); Fraire v. City of Arlington, 957 F. 2d 1268 (5th Cir. 1992)(a police officer who may not have followed established police procedure in identifying himself while in plain clothes fatally shot the driver of a truck headed toward the officer; the Court held, "regardless of what had transpired up until the shooting itself [the suspect's] movements gave the officer reason

to believe, at that moment, that there was a threat of physical harm.  Thus, the force was not excessive and the officer was entitled to qualified immunity.)

The same is true in this situation.  It was Barnes, the fleeing driver, who intentionally placed himself, Deputy Felix, and the public in danger and which produced the choice that Deputy Felix had to make.  At the time he discharged his pistol, Deputy Felix was in fear of death or serious bodily injury either by Barnes taking his weapon, crushing him, dragging him or running over him. See Exhibit 1, page 3. Moreover, just like the officer in <u>Davis</u>, who was on the running board of the escaping vehicle when he discharged his pistol, Deputy Felix was on the sill of the Toyota, a situation in which he had reason to believe presented a danger of physical harm to him and which was perceived by at least one other person in that same fashion.  <u>See</u> <u>Davis</u>, <u>Id</u>.

Deputy Felix's use of deadly force was objectively reasonable, and he is entitled to qualified immunity because he did not violate Barnes' Fourth Amendment rights. To the extent that Plaintiffs allege that Deputy Felix stopped Barnes in violation of the Fourth Amendment, that claim must fail, as the stop was based on reasonable suspicion.  See Exhibit 5.  There is no genuine issue of material fact, and Deputy Felix is entitled to judgment as a matter of law.

**B.  Harris County Is Entitled to Judgment as a Matter of Law on Plaintiffs' Claims**

**1.  Section 1983 Generally**

To prevail against a governmental entity under Section 1983, Plaintiffs must demonstrate that a [governmental] decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow. <u>See</u> <u>Board of County Comm'rs of Bryan County v.</u> <u>Brown</u>, 520 U.S. 397 (1997). The Supreme Court explained:

> "[I]t is not enough for a Section 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate

that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."

See Brown, 117 S. Ct. at 1388; See also Spiller, 130 F.3d at 167 (quoting Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 533 (5th Cir. 1996).

Thus, to recover against Harris County under Section 1983, Plaintiffs must first prove a direct causal link between the governmental policy and/or custom at issue and the alleged constitutional deprivation; they then must establish that Harris County consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens. See Snyder v. Trepagnier, 142 F.3d 791, 795-96 (5th Circ. 1998), cert. dism'd, 526 U.S. 1083 (1993)(citing City of Canton, 109 S.Ct. at 1205; Hare v. City of Corinth, Miss., 74 F.3d 633, 649 n. 4 (5th Cir. 1996). Deliberate indifference, the degree of culpability required to hold Harris County liable, is a stringent standard of fault, requiring proof that a governmental actor disregarded a known or obvious consequence of his action." See Brown, 117 S. Ct. at 1391; Piotrowski, Id.; at 237 F.3d at 579 (also describing the standard for facially innocuous policies as stringent).

Plaintiffs allege that Harris County is liable to them pursuant to Section 1983 on the following theories:  failure to supervise; "unlawful acts by official policymaker"; custom, policy or practice; and failure to train. See Doc. No. 1.  Plaintiffs also allege that Harris County is liable based on its alleged ratification of Deputy Felix's allegedly illegal conduct.  Finally, Plaintiffs allege that Harris County is liable to them pursuant to the Texas Tort Claims Act, Section 101.001, Tex. Civ. Prac. & Rem. Code.  Harris County is entitled to judgment as a matter of law on each of Plaintiffs' claims against it.

1. Harris County Cannot Be Held Liable on Plaintiffs' Claims Against It Because Deputy Felix Did Not Violate Barnes' Constitutional Rights

Even if Plaintiffs were able to establish that a constable is a final policymaker for Harris County, which Defendants deny, Harris County is entitled to judgment as a matter of law on all of Plaintiffs' theories of liability against it under Section 1983.   The fact that Deputy Felix did not violate Barnes' constitutional rights completely bars any award of damages against Harris County, as held by the United States Supreme Court in City of Los Angeles v. Heller, 475 U.S. 796 (1986). Specifically, no case authorizes the award of damages against a governmental entity such as Harris County based on the actions of one of its officers in the situation in which the officer inflicted no constitutional harm.  City of Los Angeles, Id.; see also Rios v. City of Del Rio, 444 F. 3d 417 (5th Cir. 2006).  As discussed in Section 3, supra. there is no evidence that Deputy Felix violated Barnes' Fourth Amendment rights by his use of deadly force against him on April 28, 2016.  For that reason, Harris County is entitled to summary judgment on all of Plaintiffs' claims against it.

2. Former Constable Camus Was Not A Policymaker for Harris County

Plaintiffs cannot impose liability or damages on Harris County for the actions of a constable or deputy constable in Precinct 5 because state law treats these as separate departments of government.  The Texas Constitution designates counties as "legal subdivisions of the State". Tex. Const. Art. XI, Section 1.  Constables, on the other hand, are part of the State's judicial department. Tex. Const. Art. V, Section 18.  Because Texas law structures counties and constables as separate departments, counties are not liable for the allegedly wrongful acts of constables, and constables do not make policy for counties.

Whether a constable has final authority to make policy for a county depends on "the definition of the official's functions under relevant state law." McMillian v. Monroe County, Ala., 520 U.S. 781, 786 (1997).  Final policymakers have authority "to set goals and to structure and

design the area of the delegated responsibility." Bowden v. Jefferson Cty, 676 F. App'x 251, 254 (5th Cir. 2017). This authority "may be granted directly by a legislature enactment or may be delegated by an official who possesses such authority." City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988); Raymond v. Ector County, Tex., 507 F. App'x 347, 350 (5th Cir. 2013). But the authority must come directly or indirectly from the county's governing body to be attributable to the county. Bennett v. City of Slidell, 728 F. 2d 762, 769 (5th Cir. 1984).

The office of constable is a state office created by the Texas Constitution and filled by general election. Tex. Const. art. V, Section 18. It is part of the judicial branch of state government. See Id. The Legislature retains the constitutional and statutory authority to prescribe constables' qualifications and duties. See Id., art. V, Section 18(f); Tex. Loc. Gov't Code, chapter 86. State law requires counties to pay constables' salaries, and gives counties no discretion to decline. Vondy v. Comm'rs Court of Uvalde County, 620 S.W. 2d 104, 108-09 (Tex. 1981)(requiring county to pay constable a reasonable salary). A constable "is not subject to discipline and the constable's actions are not reviewable for conformance to policy by the County. "Harris County v. Nagel, 349 S.W. 3d 769, 793 (Tex. App.—Houston [14th Dist.] 2011, pet. denied)(citing Tex. Const. art. V Section 24; Tex. Loc. Gov't Code Section 87.013).

Deputy Felix was acting in a law enforcement capacity, as a Texas peace officer in detaining Barnes on April 28, 2016 and in using deadly force against him. By state law, constables and their deputies are peace officers. Tex. Code of Crim P., Art. 2.12(2). Because Deputy Felix was acting in his law enforcement capacity, this case is governed by McMillian, Id. In McMillian, the U.S. Supreme Court held that a county sheriff acting in a law enforcement capacity was not a final policymaker for his county. See 520 U.S. 781, 785, 789(1997). This rule has been applied repeatedly by federal courts to hold that Texas constables are not final policymakers for a county,

25

including at least nine times by the Fifth Circuit.  See Bowden, 676 F. App'x at 254-55; Castro v. McCord, 259 F. App'x 664, 668 (5th Cir. 2007)(shooting incident to arrest); Tonkin v. Harris County, Texas, 257 F. App'x 762 (5th Cir. 2007)(employment discharge); Frank v. Harris County, 118 F. App'x 799, 802 (5th Cir. 2004)(sexual harassment); Keenan v. Tejeda, 290 F. 3d 252, 263 (5th Cir. 2002)(unlawful arrest); Bowles v. Cheek, 44 F. App'x 651 (5th Cir. 2002); Pena v. Jimenez, 31 F. App'x 833 (5th Cir. 2002); Sorrells v. Warner, 21 F. 3d 1109 (5th Cir. 1994)(arrest); Rhode v. Denson, 776 F. 2d 107 (5th Cir. 1985)(arrest); Gremar v. Bexar County, Tex, No. SA-13-CV-434-XR, 2014 WL 906796 at *2 n. 1 (W.D. Tex. Mar. 7, 2014); Drain v. Galveston County, 979 F. Supp. 1101, 1103 (S.D. Tex. 1997)(use of deadly force during arrest).

Fifth Circuit authority with regard to this issue is clear:  former Constable Camus, now deceased, was not a final policymaker for Harris County for purposes of Section 1983.  There is no genuine issue of material fact, and Harris County is entitled to judgment as a matter of law on all of Plaintiffs' Section 1983 claims against it because Plaintiffs cannot establish that the constable is a final policymaker for Harris County, a requisite for liability under Section 1983.

3. Harris County Is Entitled to Judgment as a Matter of Law on Plaintiffs' Failure to Supervise Claim

Before liability can be imposed upon Harris County under Section 1983, there must be a constitutional violation by a government actor, plus a custom, policy or procedure, of which a final Harris County policymaker had actual or constructive knowledge, and which was the moving force of the alleged constitutional violation.  See Monell v. Dept. of Social Services, 436 U.S. 658, 131 S. Ct. 1350 (2011).  As discussed above, former Constable Camus was not a final policymaker for Harris County as a matter of law; therefore, Harris County cannot be liable on Plaintiffs' failure to train and/or supervise theory. Second, there is no evidence that Harris County as a governmental entity has a basis on which to train and/or supervise Deputy Felix, who works as a Precinct 5

26

deputy constable.  Even if former Constable Camus were a final policymaker for Harris County, however, and even if Harris County had the legal ability to supervise Deputy Felix, which it does not, Harris County is entitled to judgment as a matter of law on Plaintiffs' failure to supervise theory.

Plaintiffs premise the failure to supervise theory of liability on Deputy Felix's use of deadly force against Barnes.[1]

Courts have recognized that, under certain limited circumstances, the failure to train or supervise employees may give rise to county liability.  Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350 (2011); Thompson v. Upshur County, 245 F. 3d 447 (5th Cir. 2001); Peterson v. City of Fort Worth, 588 F. 3d 838 (5th Cir. 2009).  In such cases, a county may be held liable only when its actions amount to deliberate indifference to the constitutional rights of those citizens with whom the untrained or unsupervised employees come into contact.  See Connick, 131 S. Ct. at 1359; Thompson, 245 F. 3d at 459.  Courts, however, have repeatedly emphasized how high the requisite standard of proof is to impute liability to a county in such cases.  See, e.g., Connick, 131 S. Ct at 1360.

Typically, a plaintiff can prove deliberate indifference only through evidence of a pattern of violations caused by the lack of training or supervision.  See Connick, 131 S. Ct. at 1360; Thompson, 245 F. 3d at 459.  A policy of authorizing officer misconduct from a single incident simply cannot be inferred except in "a narrow range of circumstances where a constitutional violation would result as the highly predictable consequence of a particular failure to train." Kitchen v. Dallas Cty., Tex., 759 F. 3d 468 (5th Cir. 2014)(quoting Connick, 131 S. Ct. at 1361;

---

[1] At Paragraph 44 of Plaintiffs' Original Petition and Request for Disclosure, Plaintiffs refer to Barnes' right to be free from unlawful seizure of his person, as well as his right to be free from the use of excessive force. As discussed in Section 3, supra. Deputy Felix based his stop of Barnes on reasonable suspicion.  Therefore, Harris County cannot be held liable on this theory, as Deputy Felix did not violate Barnes' Fourth Amendment rights by stopping him.

see also Thompson, 245 F. 3d at 459.  Even if former Constable Camus were a final policymaker

for Harris County, which he is not, and even if Harris County had the right to supervise Deputy

Felix, which it did not, Plaintiffs can only prevail on a failure to supervise theory by establishing:

"(1) inadequate [supervisory] procedures; (2) that inadequate supervision caused the constitutional

violation; and (3) the deliberate indifference of municipal policymakers. "  Pineda v. City of

Houston, 291 F. 3d 325 (5th Cir. 2002), citing Conner v. Travis Cty., 209 F. 3d 794, 796 (5th Cir.

2000).

     "Deliberate indifference" is a stringent standard of fault, requiring proof that a municipal

actor disregarded a known or obvious consequence of his action.  See Estate of Davis, Id., 406 F.

3d at 380.  For an official to act with deliberate indifference, the official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference.  See Estate of Davis, Id., 406 F. 3d at 380.   There are two means

of proving deliberate indifference.  The primary method is a pattern of similar violations "that have

occurred for so long and with such frequency that the course of conduct demonstrates the

governing body's knowledge and acceptance of the disputed conduct" as government policy.

Zarnow v. City of Wichita Falls, Tex., 614 F. 3d 161, 169 (5th Cir. 2010); see also Bd. Of County

Com'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 407 (1997), To show deliberate

indifference, proof of such a pattern is "ordinarily necessary".  Connick, Id. Further, the pattern

must show "similarity, specificity, and sufficiently numerous prior incidents."  Davidson v. City

of Stafford, Tex. 48 F. 3d 384, 396 (5th Cir. 2017).  Prior acts that are not similar and specific, like

a general claim of excessive force, are not enough.  Valle v. City of Houston, 613 F. 3d 536, 550

(5th Cir. 2010); Lewis v. Pugh, 289 F. App'x 767, 772-73 (5th Cir. 2008); Estate of Davis ex rel.

McCully v. City of N. Richland Hills, 406 F. 3d 375, 383-84 (5th Cir. 2005).  Thus, a pattern of

justified shootings—even if one existed—is no evidence of a pattern of unjustified shootings.  See Valle, 613 F. 3d at 548.

Plaintiffs generally plead that the supervision afforded Deputy Felix and other deputy constables was not adequate to ensure that its law enforcement officers responded appropriately to usual and recurring situations, which they must deal with on a regular basis in light of their duties. See Plaintiffs' Original Petition, Paragraphs 44 and 45.  This is simply a conclusory allegation, however.  There is no evidence of a constitutional violation, no evidence of inadequate supervisory procedures, no evidence that inadequate supervision caused a constitutional violation, and no evidence of deliberate indifference by a final policymaker.  Specifically, there is no evidence of a pattern of similar violations that have occurred for so long and with such frequency that the course of conduct demonstrates Harris County's knowledge and acceptance of the disputed conduct as government policy. Furthermore, even assuming that Constable Camus was a final policymaker for Harris County, which Harris County denies, there is no evidence of deliberate indifference on the his part. There is thus no evidence of deliberate indifference, and Harris County is entitled to judgment as a matter of law on Plaintiffs' failure to supervise claim.

4.   Harris County Is Entitled to Judgment on Plaintiffs' Theory of Liability Entitled "Unlawful Policy by Acts of Official Policymaker"

Plaintiffs' third claim for relief is entitled "Harris County Unlawful Policy by Acts of Official Policy-Maker".  At Paragraph 48, Plaintiffs plead: "The then Precinct 5 Constable of Harris County, Texas was an official policymaker and his actions in endorsing the illegal actions of its officers, including allowing and endorsing the use of deadly force against non-violent suspects, dangerous and imprudent policing tactics, and use of firearms in a dangerous manner under the circumstances herein, constitutes the official policy of Harris County."  See Plaintiffs' Original Petition, paragraphs 47 and 48.  This claim appears to encompass two other theories of

29

liability Plaintiffs assert:  the "custom" argument; and Plaintiffs' ratification argument.  Whatever its source, and even if this theory is completely separate from the "custom" and the ratification theories, this argument must fail.

First, the law clearly establishes that a Texas constable is not a final policymaker for a Texas county as a matter of law.  See Section B., I, I supra.  No argument the Plaintiffs make can establish that an act by Constable Camus constitutes the official policy of Harris County.  Harris County as an entity does not allow and endorse the use of deadly force against non-violent subjects, dangerous and imprudent policing tactics, and use of firearms in a dangerous manner.

Second, there is no evidence that Deputy Felix, or any other officer, engaged in any illegal actions.  As discussed above, Deputy Felix's use of deadly force was entirely justified.   Even if it were not justified, however, there is no evidence that the Precinct 5 Constable's Office has a procedure of using deadly force against non-violent suspects, of using dangerous and imprudent policing tactics, and of using firearms in a dangerous manner.

Third, the Harris County Precinct 5 Constable's Office maintains a Use of Force and Deadly Force Standard Operating Procedure. See Exhibit 2 and Exhibits "1", "2" and "3", attached thereto. The Use of Force and Deadly Force Standard Operating Procedure identifies the manner in which force and/or deadly force can be utilized.   There is no evidence of any Precinct 5 procedure with regard to the use of force and deadly force other than the one set out in Exhibit 2. .There is no genuine issue of material fact and Harris County is entitled to judgment as a matter of law on this theory of liability.

5.  Harris County is Entitled to Judgment on Plaintiffs' Informal Custom Theory

Plaintiffs allege that Harris County is liable to them on a theory that it has an informal custom, practice or policy regarding the use of force and deadly force which includes allowing,

30

encouraging, requiring and/or training officers to use the threat of deadly force and/or the use of deadly force when less intrusive and/or harmful measures were more appropriate.  Plaintiffs also allege that Harris County failed to properly supervise officers in their use of deadly force, failed to properly investigate officers' use of deadly force and failed to properly discipline officers in their improper use of force.  See Plaintiffs' Original Petition, Paragraphs 53-55.

Harris County is entitled to summary judgment on this claim for several reasons. First, as discussed above, former Constable Camus is not an official Harris County policymaker as a matter of law.   Plaintiffs therefore cannot meet the requisites set out in Monell for governmental liability. Second, even if Constable Camus were a final policymaker for Harris County for purposes of Section 1983, the law requires that the Plaintiffs establish that he had actual or constructive notice of the purported custom.  See Bennett v. City of Slidell, 728 F. 2d 762 (1984)(en banc).  Plaintiffs can adduce no evidence whatsoever that Constable Camus had actual or constructive notice of a custom with regard to the use of force, failure to supervise, failure to investigate or failure to discipline officers with regard to the use of improper force.  There is no genuine issue of material fact, and Harris County is entitled to judgment as a matter of law on Plaintiff's "informal custom" theory.

6.  Harris County is Entitled to Judgment on Plaintiffs' Failure to Train Theory

Plaintiffs' Fifth Claim for Relief against Harris County is based on its alleged failure to train officers to respond to the common and recurring situations they must deal with regularly. The United States Supreme Court has said that local governmental liability for constitutional violations "is at its most tenuous when a claim turns on failure to train" since training is further removed than actual policy from particular constitutional violations.  Connick, 563 U.S. at 61.

Harris County is entitled to judgment as a matter of law on this theory of liability for several reasons.

First, Harris County does not set the standards or policies for the training of peace officers. Rather, TCOLE has the statutory duty to establish standards and programs for education, training and licensing of all Texas peace officers.  Tex. Occ. Code, Section 1701.151(2); 1701.251. TCOLE also has the duty to gather information on compliance, to conduct research for improvement, and to allocate state money to pay for it all.  Id. 1701.151 (4) and 1701.151 (6).

Second, the summary judgment evidence establishes that Deputy Felix complied with state training standards.  See Exhibit 1, page 1.(At the time of this incident, Deputy Felix was licensed by TCOLE as a peace officer, and held the Basic Peace Officer, Intermediate Peace Officer, and Advanced Peace Officer Certificates.   He had completed 1,676 hours of continuing law enforcement training.) That training is presumed to be legally sufficient.  See Hall v. Robinson, 618 F. App'x 759, 764 (5th Cir. 2015)(affirming summary judgment on training claim when officer completed state training); see also Zarnow, 614 F. 3d at 170-71; Parker v. Missouri City, No. 4:12:CV 2484, 2015 WL 4431019 at *9 (S.D. Tex. July 17, 2015); Haywood v. Johnson, No. A-13-CA-355-SS, 2014 WL 4929311 at *9 (W.D. Tex. Oct. 1, 2014).

As TCOLE sets the standards for peace officer training, and not Harris County, there can necessarily be no deliberate indifference to training, nor is there any evidence of deliberate indifference.   There is no evidence of a prior pattern of unjustified uses of deadly force at Harris County Precinct 5 Constable's Office, even if a Texas constable could legally be a final Harris County policymaker, which Harris County denies.  There is no genuine issue of material fact, and Harris County is entitled to judgment as a matter of law.

7. Harris County is Entitled to Judgment on Plaintiffs' Ratification Claim

Plaintiffs' Seventh Claim for Relief is based on Harris County's alleged ratification of the "…conduct of its deputies and officers", presumably Deputy Felix.  Plaintiffs' allege that former Constable Camus ratified Deputy Felix's allegedly unlawful conduct on behalf of Harris County. Harris County is entitled to summary judgment on this theory of liability for two reasons.

First, as discussed previously, Constable Camus was not a final policymaker for Harris County as a matter of law.   Therefore, the argument that he ratified Deputy Felix's use of deadly force against Barnes on Harris County's behalf must fail as a matter of law.

Second, Plaintiffs undoubtedly rely on Grandstaff v. City of Borger, 767 F. 2d 161 (5th Cir. 1985) as support for their ratification theory.  Grandstaff, however, has been limited to its facts.  See Coon v. Ledbetter, 780 F. 2d 1158, 1161 (5th Cir. 1986)("The Grandstaff panel emphasized the extraordinary facts of the case, and its analysis can be applied only to extreme factual situations.")  The Court in Coon provided the following analysis:  "Grandstaff…does not stand for the proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy.  Rather, Grandstaff affirmed a judgment against a Texas city on a highly peculiar set of facts…".)  See Snyder v. Trepagnier, 142 F. 3d 791, 798 (5th Cir. 1998)  The Supreme Court has cautioned, and the Fifth Circuit has reiterated, that ratification liability must be limited to prevent it from becoming a basis for a municipality's vicarious liability for its employees.  See City of St. Louis v. Praprotnik, 485 U.S. 112, 130, 108 S. Ct. 915 (1988).

This case does not present an extreme factual situation.  Grandstaff, then, does not apply. Harris County cannot be held liable for these two reasons, and is entitled to judgment as a matter of law on Plaintiffs' ratification claim.

8.  Harris County is Entitled to Judgment on Plaintiffs' Tort Claims Act Claim

Finally, Plaintiffs allege that Harris County is liable to them pursuant to the Texas Tort Claims Act, Section _101.001 Tex. Civ. Prac. & Rem. Code.  Plaintiffs allege that Deputy Felix engaged in negligent actions toward Barnes, and that such negligence was carried out through the use of tangible property, specifically Deputy Felix's use of his weapon. The Tort Claims Act provides for a limited waiver of the common law doctrine of governmental immunity under certain circumstances.  However, this waiver "does not apply to a claim arising out of assault, battery, false imprisonment or any other intentional tort."  Tex. Civ. Prac. & Rem. Code 101.057. This claim must fail, as the undisputed evidence is that Deputy Felix's use of deadly force against Barnes on April 28, 2016 was intentional and not negligent.  See Exhibit 1, page 3.  Because Deputy Felix's use of deadly force was intentional, the Tort Claims Act waiver of sovereign immunity does not apply, Plaintiffs' Section 1983 claims and their Tort Claims Act claims are mutually exclusive.  Plaintiffs cannot pursue pendent state claims under the Texas Tort Claims Act where they are based on single event, an event alleged under a contemporaneous Section 1983 cause of action to be intentional.  Drain v Galveston County, 979 F. Supp. 1101 (S.D. Tex. 1997)

9.  Conclusion

There is no genuine issue of material fact with regard to Plaintiffs' claims against Defendants Harris County and Deputy Felix.  Defendants are entitled to judgment as a matter of law.

Respectfully submitted,

OF COUNSEL:           **/S/ Mary E. Baker**_____

VINCE RYAN
HARRIS COUNTY ATTORNEY

MARY E. BAKER
Senior Assistant County Attorney
Federal I.D. No. 7647
State Bar No. 08534000
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone:  (713) 274-5133
Facsimile: (713) 755-8924
E-mail: mary.baker@cao.hctx.net

CAMERON A. HATZEL
Assistant County Attorney
Texas Bar No. 24074373
Federal ID No. 1128943
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5376
Facsimile: (713) 274-8823
Email: cameron.hatzel@cao.hctx.net

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2019, a true and correct copy of Defendants' Consolidated Motion for Summary Judgment was served by electronic filing to:

Howard Fomby
Adam W. Fomby
Fomby & Fomby LLC
440 Louisiana Street, Suite 900
Houston, Texas 77002
Facsimile: (888) 588-4925
adam@fombylaw.com
bfomy@fombylaw.com

         **/S/ Mary E. Baker**_____
MARY E. BAKER
Senior Assistant County Attorney

35