IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | | |
|---|---|---|---|
| **JANICE HUGHES BARNES,** *et al.* | § | | |
| | § | | |
| VS. | § | | C.A. NO. 4:18-CV-00725 |
| | § | | |
| **ROBERTO FELIX, JR.,** *et al.* | § | | |

## DEFENDANTS' SUPPLEMENTAL BRIEFING

Defendants Harris County and Harris County Precinct 5 Deputy Constable Roberto Felix in his Individual Capacity ("Deputy Felix") (collectively "Defendants") now file their Supplemental Briefing pursuant to this Court's order, and would respectfully show the following:

Attached hereto as Exhibit "9" and incorporated by reference for all purposes herein is a true and correct copy of the Harris County Constable Precinct 5 Standard Operating Procedure Number 200/1.31, "Fresh Pursuit". This policy establishes guidelines for fresh pursuit in view of the fact that Precinct 5 places a high value upon the life and safety of each of its deputies, as well as the public at large. The Fresh Pursuit policy notes that the value that it places on the lives of its deputies and the public at large"…must be reconciled with the authority of a peace officer to engage in a pursuit."

Precinct 5 investigated Deputy Felix's use of deadly force against Ashtian Barnes. *See* Doc. No. 15-2 at 2 ¶6. In its investigation, Precinct 5 identified the specific policies it considered with respect to Deputy Felix's use of deadly force. Those policies were: Arrest & Apprehension; Field Operations; and Administration. *See* Doc. No. 15-2 at 4–18. The policy on Fresh Pursuit was not considered because Deputy Felix's conduct did not constitute a pursuit as defined in SOP No. 200/1.31. Similarly, none of the testimony in the record implicates the Fresh Pursuit policy.

SOP No. 200/1.31 is directed to vehicle pursuits and derives authority from the Texas Transportation Code with respect to the operation of emergency vehicles. It contains policies to guide the determination as to when to initiate or continue a pursuit. It identifies the type of vehicles qualified to enter into a vehicle pursuit, limits the number of Precinct 5 emergency vehicles authorized to participate in a pursuit, and sets other restrictions as well. *See* Exhibit "9".

Deputy Felix did not engage in a vehicle pursuit when Ashtian Barnes began to flee. Instead, Deputy Felix jumped onto the door sill and held on to the car to avoid being run over or drug. (Doc. 15-1 at 3 ¶10). Precinct 5 Constable Chief Terry Allbritton ("Chief Allbritton") was questioned by Plaintiffs' counsel as to whether Deputy Felix had a "reasonable opportunity as Ashtian started moving towards his keys to put himself in a safer position and possibly let the individual drive away, would—in the policy of Harris County Precinct 5, would it be your policy that's how he should behave as an officer?" Chief Allbritton testified: "A. We don't have a procedure that says word for word what exactly to do in that scenario. Q. Right. But— A. I do know that if you have someone stopped, it's better to keep them stopped. If you can prevent them from driving off and going and causing a serious crash or injury to someone else, themselves, yourself, if you can prevent that, I believe you should." *See* Doc. No. 18-5 at 23–24 (89:21–90:9).

At bottom, Plaintiffs argue that Deputy Felix's conduct caused this encounter. This position is nearly identical the one rejected by the Fifth Circuit in *Davis v. Romer*, 600 Fed. App'x 926 (5th Cir. 2015). In *Davis*, Charal Thomas was stopped observed committing traffic violations and stopped by uniformed officers. While Thomas waited in the vehicle, the officers ran his driver's license through the computer and discovered outstanding misdemeanor warrants. Standing by the driver's door, one of the officers informed Thomas that he was going to be arrested and asked him to exit his vehicle. Like Ashtian Barnes, Thomas refused. The officer attempted to open the driver's

side door, reaching inside the vehicle to unlock the door. With the officer's arm inside the vehicle, Thomas started driving toward the left toward the exit of the parking lot and then onto the service road alongside a freeway. When the vehicle started moving, Officer Romer jumped on the running board. Like Deputy Felix, Officer Romer was shouting for Thomas to stop the vehicle. Like Ashtian Barnes, Thomas kept driving. As the vehicle was traveling on the highway's service road, Romer, who was standing on the running board, pulled his gun from the holster and fatally shot Thomas. 600 Fed. App'x at 928.

The plaintiffs' principal argument was that Officer Romer's conduct caused the dangerous encounter because Officer Romer allegedly had the choice to not grab onto the moving vehicle. 600 Fed. App'x at 929. The Fifth Circuit rejected this argument, citing to *Thompson v. Mercer*, 762 F.3d 433 (5th Cir. 2014), another case in which a plaintiff argued that the officers created the danger in their attempts to intercept the fleeing vehicle driven by the suspect. The *Thompson* Court explained that the "question is not whether the force would have been avoided if law enforcement had followed some other police procedures." *Id.* at 440 (citations and internal quotations marks omitted). The *Thompson* Court continued, "…regardless of what had transpired up until the shooting itself, the question is whether the officer [had] reason to believe, at that moment, that there was a threat of physical harm." *Id.* (citation and internal quotations marks omitted). The *Thompson* Court concluded that it was the fleeing driver and not the officer "who intentionally placed himself and the public in danger by unlawfully engaging in the …flight that ultimately produced the choice that [the officer] had to make." *Id.*; *see also Harris v. Serpas*, 745 F. 3d 767, 772 (5th Cir. 2014) (explaining that "any of the officer's actions leading up to the shooting are not relevant for the purposes of an excessive force inquiry in this Circuit.").

3

At the moment of the shooting, Deputy Felix perceived an imminent threat of death or serious bodily injury as a result of Ashtian Barnes' conduct. Deputy Felix did not violate the Fourth Amendment, and he is entitled to qualified immunity.

Respectfully submitted,

OF COUNSEL:

VINCE RYAN
HARRIS COUNTY ATTORNEY

/s/ *Mary E. Baker*
MARY E. BAKER
Federal I.D. No. 7647
Texas Bar No. 08534000
Senior Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5133
Facsimile: (713) 755-8924
Email: mary.baker@cao.hctx.net
ATTORNEY IN CHARGE

CAMERON A. HATZEL
Assistant County Attorney
Federal I.D. No. 1128943
Texas Bar No. 24074373
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5376
Facsimile: (713) 755-8924
Email: cameron.hatzel@cao.hctx.net

ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2020, a true and correct copy of the foregoing instrument was served on all parties of record by filing with the Court's ECF/CM system.

/s/ *Cameron A. Hatzel*
Cameron A. Hatzel