**EXHIBIT 9**

# Standard Operating Procedures

Section: Operations                                    Issue Date: 08/01/2009

Revision Date:                                         Revision number: 1

Procedure number: **200/1.31**

Subject: **Fresh Pursuit**

PURPOSE: To establish guidelines regarding fresh pursuit. The Constable's Department places a high value upon the life and safety of each of its deputies and the public at large. It believes that the methods used to enforce laws should minimize the risk of injury to deputies and citizens alike. This value on human life must be reconciled with the authority of a peace officer to engage in a pursuit. This authority stems from his duty to apprehend those persons who have committed or are committing a violation of the law. The discretion to pursue law violators is available as a vital tool in the police's deterrence and crime control responsibilities.

Therefore, it is the Department's policy that deputies will initiate or continue a pursuit only when justified by the illegal flight of a law violator, and then only when the pursuit will be executed with caution so as not to create extreme or unreasonable danger for either the deputy or the public.

I. DEFINITIONS

   A. Fresh Pursuit: Pursuit of an offender, without unreasonable delay, but not necessarily instant or immediate pursuit, in order to affect apprehension and arrest for the commission of an offense.

   B. Pursuit driving: Pursuit driving is the pursuit and apprehension of a violator or felony suspect in a moving motor vehicle and should be classified as hazardous driving and requires the pursuit of all types of drivers under varied climatic and road surface conditions. Pursuit driving should always be governed by common sense and concern for crashes. Self-preservation and consideration of the safety of innocent persons is a necessary element in any pursuit situation.

    C. Primary Unit: Primary Unit is the initial pursuing law enforcement vehicle.

    D. Secondary Unit: Secondary Unit is a back up law enforcement vehicle.

    E. Emergency Driving: Emergency driving should not be confused with pursuit driving but relates to the effort of a law enforcement vehicle to proceed to an emergency scene at a speed greater than normally driven.

II. <u>AUTHORITY – TEXAS TRANSPORTATION CODE</u>

    A. The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set fourth in this section, but subject to the conditions herein stated:

    B. The driver of an authorized emergency vehicle may:

        1. Park or stand, irrespective of the provisions of this chapter.

        2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operations.

        3. Exceed the maximum speed limits so long as he does not endanger life or property.

        4. Disregard regulations governing direction of movement or turning in specified directions.

    C. An authorized emergency vehicle that is operated as a police vehicle is not required to be equipped with or display a red light visible from the front of the vehicle.

D. A police officer may operate an authorized emergency vehicle for a law enforcement purpose without using the audible or visual signals required by Section 546.003 if the officer is:
   1. responding to an emergency call or pursuing a suspected violator of the law with probable cause to believe that:
      a. knowledge of the presence of the officer will cause the suspect to:
         (i) destroy or lose evidence of a suspected felony;
         (ii) end a suspected continuing felony before the officer has obtained sufficient evidence to establish grounds for arrest; or
         (iii) evade apprehension or identification of the suspect or the suspect's vehicle; or
      b. because of traffic conditions on a multilane roadway, vehicles moving in response to the audible or visual signals may:
         (i) increase the potential for a collision; or
         (ii) unreasonably extend the duration of the pursuit; or
   2. complying with a written regulation relating to the use of audible or visible signals adopted by the local government that employs the officer or by the department.

III. <u>DETERMINING WHEN TO INITIATE OR CONTINUE A PURSUIT</u>

Deputies should evaluate the risk involved in initiating or continuing a pursuit. When there is a clear and unreasonable hazard to the deputy, fleeing motorist, and/or other person, a pursuit should not be initiated nor continued. An unreasonable hazard exists when speeds dangerously exceed the flow of traffic or when vehicular or pedestrian traffic necessitates erratic maneuvering which exceeds the performance capabilities of the vehicle or the driver. Among the factors a deputy must consider before pursuing or continuing a pursuit of a suspect fleeing in a motor vehicle are:

A. Nature of the offense;

B. Road conditions;

C. Traffic conditions;

   D. Weather conditions;

   E. Is the pursuing deputy alone or is the assistance of another deputy available;

   F. The performance capabilities of the patrol vehicle;

   G. The current readiness of the driver.

IV. <u>VEHICLES QUALIFIED TO ENTER INTO A VEHICLE PURSUIT</u>

   A. Only emergency vehicles will participate in the actual pursuing of the fleeing vehicle.

   B. If a deputy in an unmarked vehicle has probable cause to believe that a criminal offense has taken place and that it warrants immediate action, they may attempt to follow the fleeing vehicle until a marked vehicle enters into pursuit of the fleeing vehicle.

   C. Vehicles that have prisoners, witnesses, suspects, complainants, or other non-law enforcement personnel aboard will not normally become engaged in fresh pursuit situations.

   D. If the pursuit is initiated by a motorcycle unit, the motorcycle unit shall abandon the pursuit when a four-wheel vehicle joins the pursuit and that vehicle will assume primary unit responsibilities. The motorcycle unit shall remain in the immediate area and proceed to the termination point of the pursuit if the suspect is apprehended.

V. <u>NUMBER OF VEHICLES ELIGIBLE TO ENGAGE IN PURSUITS</u>

   A. Only three (3) Precinct Five units will be actively involved in a vehicle pursuit. The initial pursuing vehicle (Primary Unit) and the backup unit (Secondary unit) and a supervisor will be the only vehicles authorized to actively pursue a fleeing vehicle from the rear, with the following exception:

      1. The Deputy of the primary vehicle or a supervisor may request, from the dispatcher additional vehicles to join the pursuit from the rear if it appears certain that the Deputies in the two pursuit vehicle will not be sufficient to safely affect the arrest of the suspect(s).

   2. When a deputy hears the broadcast that a vehicular pursuit has commenced, a Deputy in a marked vehicle within the immediate area will join the pursuit behind the primary vehicle, becoming the secondary vehicle. Units responding must relay this fact to the dispatcher. If more than one unit responds as the secondary vehicle, the dispatcher will designate the appropriate unit. It is imperative that the secondary unit follow the primary unit at a distance that will allow for maximum safety for both vehicular and pedestrian traffic.

   3. If the primary vehicle cannot continue in the pursuit (i.e. mechanical difficulties, etc.) the Deputy will advise over the radio that they are dropping out of the pursuit. The secondary vehicle will then assume the position of primary vehicle. This exchange must be accomplished with the utmost safety. At no other time will a secondary vehicle pass the primary vehicle during the pursuit. Another marked vehicle will be assigned by the dispatcher to enter the pursuit from the rear to assume the role of secondary vehicle if necessary.

B. All vehicles in the actual pursuit of the fleeing vehicle will activate both siren and emergency lights when engaged in the vehicular pursuit, and will continuously use both throughout the entire pursuit. Deputies are reminded that the warning effect of the siren will decrease rapidly as the speed of the vehicle is increased, since many motorists will enter an intersection after allowing the first emergency vehicle the right of way.

C. The dispatcher may direct other units to locations where they would be of assistance should any of the following occur:

   2. The chase comes to a conclusion; or

   3. In the event the fleeing vehicle eludes the primary and secondary vehicles; or

   4. In case the occupant(s) in the fleeing vehicle abandon their vehicle and flee by some other means.

   E. The dispatcher will not knowingly direct, nor will a deputy intentionally put themselves in the direct path on the on-coming pursued and/or pursuit vehicle(s):

VI. <u>RADIO COMMUNITCATIONS</u>

   A. It is the responsibility of the primary vehicle to immediately notify the dispatcher when the fleeing vehicle initiates definite evasive measures.

   B. Due to the imminent dangers involved in vehicular pursuits, radio transmission not concerning the pursuit shall be kept to a minimum. All units not directly involved in the apprehension effort will refrain from non-emergency transmission.

   C. The dispatcher will refrain from dispatching non-emergency related calls over the radio when units are involved in a pursuit.

   D. While the pursuit Deputy is transmitting information over the radio, it is important that his/her voice be as normal and coherent as possible. With the siren operating, a Deputy may have the tendency to shout when transmitting. Shouting only causes the message to become distorted. The Deputy must remain as calm as possible.

   E. If the vehicle is occupied by two Deputies, it will be the responsibility of the passenger to handle transmissions during the actual pursuit.

   F. The transmitting Deputy of the primary vehicle shall convey the following information as it becomes available:

      1. Unit Number;

      2. Location;

      3. Direction of travel;

      4. Reason for pursuit;

      5. Description of vehicle, occupants, license number, etc. and

      6. Estimated rate of speed.

G. The Deputy should keep the dispatcher informed of the direction of travel and any other information deemed appropriate. It is particularly important that the reason for the pursuit be established. (i.e. traffic violation, robbery etc.)

VII. <u>RESTRICTIONS</u>

   A. The following methods of stopping a fleeing vehicle will not be attempted:

   1. Driving along the side of or in front of the fleeing vehicle in an attempt to force the vehicle from the roadway;

   2. Bumping or ramming the fleeing vehicle in an attempt to force it from the roadway;

   3. Do not discharge a firearm from a moving vehicle or at a fleeing vehicle unless you reasonably believe that deadly force is immediately necessary to protect yourself or another person from unlawful deadly force. (Refer to S.O.P. 200/2.14 Use of Force)

   4. Firing warning shots is never permissible

   5. At no time will deputies pursue a fleeing vehicle by driving the wrong way down a freeway or toll road.

   B. The following methods of stopping a fleeing vehicle will not be attempted unless authorized by an Assistant Chief and then only as a last resort to apprehend a fleeing vehicle who shows total disregard for his safety and the safety of others:

   1. Roadblocks- A barricade or other obstruction across a roadway set up to stop or prevent the escape of a fleeing vehicle. All roadblocks must be set up in a conspicuous manner, giving the fleeing driver the opportunity to stop if he chooses to do so. Every effort also should be made to divert other vehicular and pedestrian traffic away from the area of the roadblock

   a. Occupied vehicles and/or private vehicles will not be used as a roadblock.

7 of 9

S.O.P. /200.1.31
Fresh Pursuit

    b. Marked patrol vehicles, however, may be used for a roadblock if no other suitable equipment is available. All relevant information concerning the roadblock will be relayed over the police radio to all vehicles involved in the pursuit.

  2. Rolling roadblocks - Positioning patrol units directly in front of the fleeing vehicle and directly behind the fleeing vehicle in an attempt to stop the fleeing vehicle. This method should only be used on a violator who is maintaining a legal speed or less but is willfully failing to yield to the deputies signal to stop.

VIII. <u>INTER-JURISDICTIONAL PURSUITS</u>

The communications center, with the approval of the shift supervisor or field supervisor, will notify outside agencies if this department is in pursuit in their jurisdiction. The informing person will specify that the call is either a request for assistance or merely a courtesy notification with no participation desired.

Deputies shall not become involved in another agency's pursuit unless specifically authorized by the field supervisor, or unless it is clearly demonstrated that a unit from an agency is unable to request assistance, or the emergency nature of the situation dictates the need for assistance. In these instances, all departmental pursuit policies are in effect.

IV. <u>TERMINATING A PURSUIT</u>

  A. A vehicular pursuit may be terminated or discontinued by any of the following:

    1. The primary vehicle

    2. A Supervisor

    3. The Shift Commander

    4. A Commanding Officer

5. The deputy knows the suspect's identity and knows that the suspect is wanted for a traffic violation, misdemeanor or non violent felony.

6. The primary unit loses visual contact with the suspect. This does not imply the Deputies must cease looking for the suspect, but must slow the pursuit after loss of contact.

7. When there is a clear and unreasonable danger to the Deputy, fleeing suspect and/or any other persons. This may be due to excessive speed, reckless driving techniques, or erratic driving by the suspect which exceeds the performance capabilities of the vehicles or the drivers.

8. When the danger created by the pursuit outweighs the necessity for the immediate apprehension.

X. <u>FIELD SUPERVISORS' RESPONSIBILITIES</u>

A. Field supervisors will monitor all radio communications to ensure that only those units authorized and designated by the dispatcher participate in pursuits. Field supervisors will order any response necessary and appropriate that is within department policy to conclude the pursuit. A field supervisor may become involved in the pursuit if the vehicle he is driving has emergency equipment.

B. In most instances, the field supervisor will go to the scene of a concluded pursuit and take command. The field supervisor shall go to the scene of a concluded pursuit any time a suspect is apprehended or injuries, death, or property damage occur as a result of or in the course of the pursuit.

XI. <u>SHIFT COMMANDERS RESPONSIBILITIES</u>

The shift supervisor will monitor all actions of the field units and the dispatcher to ensure that departmental procedures regarding pursuits are being observed.

<u>SPECIAL EMPHASIS</u>
Deputies should recognize that the decision to terminate a pursuit may be the most intelligent course of action.