IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANICE HUGHES BARNES, INDIVIDUALLY AND AS A REPRESENTATIVE OF THE ESTATE OF ASHTIAN BARNES, DECEASED; and TOMMY DUANE BARNES<br>*Plaintiffs* | § § § § § § | |
| VS. | § § § | C.A. NO.: 4:18-CV-00725 |
| ROBERTO FELIX, JR., AND THE COUNTY OF HARRIS, TEXAS<br>*Defendants.* | § § § | |

## DEFENDANTS' CONSOLIDATED OBJECTIONS AND REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT

Defendants Harris County and Harris County Precinct 5 Deputy Constable Roberto Felix, Jr. in his Individual Capacity ("Deputy Felix") (collectively "Defendants") now file their Objections and Reply to Plaintiffs' Response to Defendants' Consolidated Motion for Summary Judgment and would respectfully show this Court as follows:

## OBJECTIONS

1. Defendants object to the admission of Plaintiffs' Exhibit "6", Plaintiffs' Expert Report as hearsay. See Doc. 44-6. Plaintiffs' Exhibit "6" is thus inadmissible pursuant to Rule 802, Fed. R. Evid. Defendants request that Plaintiffs' Exhibit "6" be excluded.

2. Defendants object to the admission of Plaintiffs' Exhibit "14", an article from the Houston Chronicle dated January 8, 2016. See Doc. 44-14. Plaintiffs' Exhibit "14" is hearsay, and is thus inadmissible pursuant to Rule 802, Fed. R. Evid. Defendants request that Plaintiffs' Exhibit "14" be excluded.

3. Defendants object to the admission of Plaintiffs' Exhibit "15", the Harris County Toll Road Authority Enterprise Fund, which includes the financial statements of the Harris County Toll Road Authority, including its net position as of February 28, 2017. See Doc 44-15. Plaintiffs' Exhibit "15" is irrelevant to the matters at issue in this case and is thus inadmissible pursuant to Rule 402, Fed. R. Evid. Defendants request that Plaintiffs' Exhibit "15" be excluded.

## REPLY

**A.   Deputy Felix is Entitled to Qualified Immunity**

Although Plaintiffs maintain that Deputy Felix's use of deadly force against Ashtian Barnes was unconstitutional and not justified, they themselves have introduced evidence in their Response that Deputy Felix's use of deadly force was justified. Specifically, Plaintiffs themselves introduced the following statement from the Houston Police Department, which investigated this incident: "Based on the dash cam video and the statement made by Deputy Felix the shooting appears to be justified as the suspect refused to comply with the officer's commands to exit the vehicle and in turn attempted to flee with no regard to the officer's safety. The suspect in question [Ashtian Barnes] was also reaching around the vehicle for an unknown reason. A loaded handgun was later found under the suspect's seat." See Doc. 44-7, page 3. This is precisely Defendants' position: the use of deadly force was justified because at the moment of the shooting, Deputy Felix was in fear of death or serious bodily injury. The incident was investigated by the Houston Police Department, a separate law enforcement agency. The Houston Police Department then referred the incident to the Harris County District Attorney's Office for further investigation and presentation to a grand jury. Deputy Felix was no-billed.

Plaintiffs' Response does not contest the legal test for qualified immunity or the "four commandments" distilled from the Fifth Circuit's case law regarding qualified immunity. (*See* Doc. 44 at 13–15 (quoting *Morrow v. Meachum*, 917 F.3d 870, 872 (5th Cir. 2019)). Instead,

Plaintiffs attempt to characterize the constitutional question in this case as a "broad general proposition" that the "use of deadly force to prevent the escape of an unarmed 'suspect'" is always a violation of the Fourth Amendment. (*See* Doc. 18 at 14) (citing *Tennessee v. Garner*, 471 U.S. 1, 21 (1985)). Plaintiffs' approach is legally incorrect, and Plaintiffs have failed to demonstrate a genuine issue for trial on the question of Deputy Felix's qualified immunity.

First and foremost, the Supreme Court's holding in *Tennessee v. Garner* is inapposite because the record in that case indicates that the police officer in question "never attempted to justify his actions on any basis other than the need to prevent an escape." 471 U.S. at 21. In contrast, it is undisputed that Deputy Felix was faced with a situation which was dangerous, occurring very quickly, and which presented Deputy Felix with the threat of serious bodily injury or death by being run over or dragged by Ashtian Barnes ("Barnes")' vehicle. (Doc. 42 at 3 ¶13; Doc. 42-5 at 44–45). Deputy Felix has never asserted that he used deadly force against Barnes solely to prevent Barnes' escape. Accordingly, *Tennessee v. Garner* is a factually distinct precedent and reading that case to imply that a police officer's use of force against a fleeing suspect will always constitute a deprivation of constitutional rights invites serious error.

Indeed, Plaintiffs' Response fails to frame the constitutional question "with specificity and granularity." *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 308 (2015). In *Mullenix*, the Supreme Court **reversed** the Fifth Circuit for holding that an officer "violated the clearly established rule that a police officer may not 'use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others.'" *Id.* Plaintiffs are asking this Court to make the same error by focusing on an over-generalized formulation of the case law involving excessive force and fleeing suspects. Simply characterizing Deputy Felix's actions as an attempt to "stop Barnes from fleeing" is not legally dispositive and this view completely ignores the dangerous circumstances

that Barnes created when he attempted to drive off while he was still interacting with Deputy Felix during the traffic stop, and when he was not free to leave.

Plaintiffs also point to *Lytle v. Bexar County*, 560 F.3d 404 (2009) for the apparent proposition that a police officer will not be entitled to use deadly force with respect to a fleeing suspect in a motor vehicle. (Doc. 44 at 12-13). Problematically for Plaintiff's position, the Fifth Circuit in *Lytle* recognized that if the summary judgment evidence on whether the suspect's vehicle had been moving toward the officer was undisputed, the police officer "would likely be entitled to qualified immunity" based on the "threat of immediate and severe physical harm." 560 F.3d at 412. In this case, of course, it is undisputed that Barnes began to accelerate away while Deputy Felix was caught in and pinned by the car's door, forcing him to quickly jump up onto the sill of the door and hang on to the car to prevent being run over or dragged by the vehicle. (Doc. 42-1 at 3 ¶10). Accordingly, *Lytle* supports Defendants' view that Deputy Felix is entitled to summary judgment on qualified immunity because Barnes' operation of his vehicle very clearly placed Deputy Felix in harm's way.

**B.** **The Court Should Scrutinize Plaintiffs' Assertions Regarding Deputy Felix's Split-Second Decision to Hold On To Barnes' Accelerating Vehicle**

Plaintiffs' argument centers on the untenable supposition that Deputy Felix unreasonably placed himself into danger in an attempt to prevent Barnes from fleeing. (*See* Doc. 44 at 15-16, 22). This characterization ignores the undisputed facts that Barnes had been pulled over and detained pursuant to a lawful traffic stop, Barnes was in close proximity to and interacting with Deputy Felix, and then Barnes unexpectedly, and without warning, grabbed his keys to turn the vehicle on and drive away. Plaintiffs' argument is "wholly without merit" because, under such circumstances, legally it is the fleeing driver and not the officer who has engaged in the reckless conduct. (*See* Doc 42 at 28–29 (quoting *Thompson v. Mercer*, 762 F.3d 433, 436 (5th Cir. 2014)).

Even after Deputy Felix orally warned Barnes "Don't do it" Barnes continued to quickly put his car in drive without any regard for the safety or instructions of Deputy Felix. (Doc. 42-1 at 3 ¶¶9-10). Thus, this situation is not analogous to an officer jumping in front of a suspect's oncoming car. Here, it is undisputed that Deputy Felix maneuvered onto the vehicle in order to avoid being drug or run over by the vehicle and thus was merely reacting to the extremely dangerous situation that Barnes created. (Doc. 42-1 at 10). Plaintiffs' attempt to minimize Barnes' role in creating these extremely dangerous circumstances is both legally and factually incorrect, and falls short of creating a genuine issue for trial.

Plaintiffs' attempt to argue that Deputy Felix unreasonably created the need to use deadly force against Ashtian Barnes is also without merit. Defendants deny that Deputy Felix created the situation in which the use of deadly force became necessary, as discussed above. Further, the cases cited by Plaintiffs are not precedent for this Court. Plaintiffs cite two Fifth Circuit cases which they contend are on point: *Edmond v. City of New Orleans*, 20 F. 3d 1170 (5th Cir. 1994) and *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F. 3d 268, 286-87 (5th Cir. 2015). The *Edmond* case is dicta. In the *Mason* case, the analysis is drawn from Judge Higginbotham's concurring opinion, which has no precedential value. Finally, the Sixth, Seventh and Ninth Circuit cases cited by Plaintiffs are not controlling in the Fifth Circuit. Plaintiffs' attempt to shift the responsibility for this incident onto Deputy Felix in this manner must fail.

C. **Harris County Is Entitled to Summary Judgment Because Former Constable Phil Camus is Not a Harris County Policymaker as a Matter of Law**

The easiest path to resolution involves the question of whether former Harris County Constable Precinct 5 Phil Camus, now deceased, was a policymaker for Harris County for the purposes of *Monell* at the time of Barnes' death. The Supreme Court provided the framework to answer this question in *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 786 (1997), and the Fifth

Circuit has consistently applied this framework to constables in Texas.[1] Harris County urges the Court to follow the Fifth Circuit's well-established precedent and grant summary judgment on this settled issue of law. Plaintiffs, on the other hand, ask the Court to defy at least **nine** Fifth Circuit precedent cases,[2] strike off on its own, and fashion a contrary rule for their idiosyncratic case.

Plaintiffs' position seems to be based on the misguided conception that "there is always some official or body who has final policymaking authority for a particular area of government business." (Doc. 44 at 28) (citing to *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988)). This approach puts the cart before the horse. As set forth above, former Constable Camus was not a Harris County policymaker with respect to his law enforcement activities under well-established

---

[1] *See Bowden v. Jefferson Cnty., Tex.*, 676 Fed. App'x 251, 254–56 (5th Cir. Jan. 19, 2017) (affirming district court's grant of summary judgment based, in part, because it is well established under Texas law that Texas constables are not final policymakers for the county and rejecting arguments—identical to those raised by Plaintiffs here—based on *Harris Cnty. v. Nagel*, 349 S.W.3d 769, 793–94 (Tex. App. 2011)); *Castro v. McCord*, 259 F. App'x 664, 668 (5th Cir. 2007) (in a case involving a shooting incident to arrest, "our caselaw [] indicates that, as a matter of law, constables are not policymakers."); *Tonkin v. Harris Cnty., Tex.*, 257 F. App'x 762, 764 (5th Cir. 2007) (in a matter involving an employee discharge, "[T]he court concluded that constables 'lacked the power to make county policy.' Other decisions in our circuit support this conclusion, as do Texas statutes.") (internal citations omitted); *Frank v. Harris Cnty.*, 118 Fed. App'x 799, 801–02 (5th Cir. 2004) (affirming district court's summary judgment in a sexual harassment case); *Keenan v. Tejada*, 290 F.3d 252, 263 (5th Cir. 2002) ("In a case involving an unlawful arrest, this court held unambiguously that, under Texas law, Texas county constables are not considered policy-makers in the area of law enforcement.") (citing *Rhode v. Denson*, 776 F.2d 107, 108–10 (5th Cir. 1985)); *Bowles v. Cheek*, 44 Fed. App'x 651 ("Harris County does not qualify as a municipal policymaker. . . . Neither does Harris County Precinct 5 Constable Glen Cheek qualify as a municipal policymaker.") (citing *Rhode v. Denson*, 776 F.2d 107, 108–10 (5th Cir. 1985)); *Pena v. Jimenez*, 31 Fed. App'x 833 (5th Cir. 2002) ("The issue whether Constable Jimenez is a policymaker for purposes of 42 U.S.C. § 1983 liability is foreclosed by *Rhode v. Denson*, 776 F.2d 107, 108–110 (5th Cir. 1985), which held as a matter of law that the constable of a Texas county precinct was not the policymaker; and, therefore, the county could not be held liable for his acts or edicts."); *Rhode v. Denson*, 776 F.2d 107, 108–10 (5th Cir. 1985) ("[W]e hold that Denson, as a constable, lacked the power to make county policy."). *See also Gremar v. Bexar Cnty., Tex.*, No. SA-13-CV-434-XR, 2014 WL 906796 at *2 n.1 (W.D. Tex. Mar. 7, 2014); *Drain v. Galveston Cnty.*, 979 F. Supp. 1101, 1103 (S.D. Tex. 1997) ("According to Fifth Circuit authority, a county constable is not a policymaker of the county.").

[2] *See* Footnote 1, *supra*.

Texas law. As spelled out by the Supreme Court in *Praprotnik*, there is no question that state law is controlling on such questions:

> We begin by reiterating that the identification of policymaking officials is a question of state law. . . . Thus the identification of policymaking officials is not a question of federal law, and it is not a question of fact in the usual sense. The States have extremely wide latitude in determining the form that local government takes, and local preferences have led to a profusion of distinct forms.

*Praprotnik*, 485 U.S. at 124. Texas law on this question is abundantly clear and cannot be abandoned in the quest to identify a policymaker.

Plaintiffs give short shrift to this substantial body of case law demonstrating, time and time again, that constables in Texas are not final county policymakers and suggest that these cases all "involved different facts and circumstances" without further analysis. (Doc. 44 at 29). Instead, Plaintiffs ask the Court to focus on the unique state appellate case, *Harris Cnty. v. Nagel*, 349 S.W.3d 769, 794 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). The *Nagel* case is immediately distinguishable from the facts of this case because *Nagel* involved the specific issue of serving mental health warrants for all of Harris County, not a constable's constitutional law enforcement duties within a specified area. *Id.* Indeed, this is a narrow exception limited to an area "[w]here the commissioners court allocates *all* such funds and responsibility to a *single precinct constable's office*, that constable can be said to represent the county *in that particular area of the county's business.*" *Id.* (emphasis added). No question remains, however, that a constable "is not subject to discipline and the constable's actions are not reviewable for conformance to policy" by the county. *Id.* at 793. In *Bowden v. Jefferson Cnty., Tex.*, 676 Fed. App'x 251, 254–56 (5th Cir. Jan. 19, 2017), the Fifth Circuit determined that *Nagel* was a case of limited applicability and rejected an attempt to extend the *Nagel* decision beyond its unique circumstances involving the service of mental health warrants by Harris County Constable Precinct 1 for all of Harris County.

Plaintiffs now allege that Harris County is liable for Deputy Felix's use of deadly force because the Sam Houston Tollway, where the incident occurred, is owned and operated by the Harris County Toll Road Authority ("HCTRA"), a department of Harris County. Without any factual support, Plaintiffs allege that Harris County relies on the various Harris County Constables as its enforcement agency, claiming that as part of their primary activities on the Toll Road, deputy constables routinely pull over and sometimes arrest toll violators. Again, without any factual support, Plaintiffs allege that the Constables act as a private security force for the toll road business operated by Harris County, despite the fact that the Sam Houston Tollway is a public roadway, and that any law enforcement officer who stops a prohibited vehicle is not engaged in the collection of a toll or a fine, but is enforcing the Texas Transportation Code. Finally, Plaintiffs allege that Harris County has full and complete control of these activities. Plaintiffs allege further that the activity in which an individual like Deputy Felix was engaged is not a law enforcement activity. *See* Doc. 44 at 23-25.

There is first of all, no doubt that a deputy constable assigned to patrol the Sam Houston Tollway is engaged in law enforcement activity. Driving on the Sam Houston Tollway without paying a toll is a misdemeanor. *See* Tex. Transp. Code Section 284.203. Additionally, driving a prohibited vehicle on the Sam Houston Tollway also constitutes an offense. *See* Texas Transp. Code section 284.203. Like any law enforcement officer, when Deputy Felix stopped Ashtian Barnes on traffic on April 28, 2016, he was engaging in law enforcement activity, ie stopping an individual who was driving a prohibited vehicle on the Sam Houston Tollway in violation of the Texas Transportation Code. Neither Deputy Felix nor any other deputy who works on the Sam Houston Tollway is involved with the collection of tolls.

Second, Plaintiffs' unsupported allegation that in patrolling the Sam Houston Tollway, a deputy constable is acting as private security for Harris County is also completely contradictory to the evidence Plaintiffs themselves introduced in their Response. Plaintiffs have introduced a copy of the Harris County Precinct 5 Constable Job description of Deputy (Toll Road). *See* Doc. 44-11, pages HC/Barnes 167 through 170. In that document, the duties of a Precinct 5 Toll Road Deputy are set out. In this extensive listing of duties, which includes, but is not limited to, operating a patrol vehicle in an assigned area unless dispatched to a call outside of the assigned area, responding to calls for service, monitoring vehicular traffic and issuing citations to violators, making arrests, including subduing individuals with appropriate action and use of force, and many more, there is nowhere to be found the responsibility of acting as a private security force for the Toll Road. *See* Doc. 44-11, pages HC/Barnes 167 through 170. Rather, a Precinct 5 Toll Road Deputy such as Deputy Felix has the responsibility of protecting life and property, preserving the peace and maintaining order, preventing or suppressing crime, and investigating reports of crimes. Deputy Felix also had the duty to enforce all state laws and applicable county ordinances, and documenting activities, investigations, other incidents, and making arrests as required. *See* Doc 44-11 page HC/Barnes 167. Finally, the Texas Government Code prohibits constables from collecting debt for another. *See* Tex. Gov't Code 614.041. There is no genuine issue of material fact with respect to the function Deputy Felix was performing on the date of his contact with Ashtian Barnes. Plaintiffs' allegation that Toll Road deputies are not acting in a law enforcement capacity is belied by the very evidence Plaintiffs have introduced.

Plaintiffs' attempt to hold Harris County liable for what they claim was the unconstitutional use of deadly force is likewise unavailing. Plaintiffs attached Defendant Harris County's Objections and Responses to Plaintiffs' Second Set of Interrogatories. *See* Doc. 44-13. They

claim that Harris County has sole control of the section of the Toll Road on which this incident occurred. Again, however, the evidence Plaintiffs attach in support of this allegation establishes that such is not the case. Harris County's Response to Plaintiffs' Interrogatory No. 12 provides in pertinent part: "…Harris County has no discretion to assign a law enforcement agency to perform law enforcement activities on the Sam Houston Tollway…The Sam Houston Tollway stretches into several (including some overlapping) law enforcement jurisdictions. All of these law enforcement agencies have the authority to enforce state law on the Harris County Toll Road roadways within their jurisdictions." *See* Doc 44-13. That authority of other law enforcement agencies to enforce state law includes the enforcement of the Texas Transportation Code provisions at issue here, Thus, Harris County cannot be held liable on Plaintiffs' toll road theory.

Additionally, Plaintiffs asked Harris County the following in Interrogatory No. 13: "Does Harris County have the authority to control which entity or law enforcement agency conducts toll road enforcement on the Sam Houston Beltway? If so, what entities and/or law enforcement agencies have been delegated authority to conduct toll road enforcement on the Sam Houston Beltway, and specifically which portion of the Sam Houston Beltway?" In response, Harris County objected to this Interrogatory as multifarious and as assuming facts not in evidence, ie that Harris County had delegated authority to various law enforcement agencies to conduct toll road enforcement. Subject to these objections, Harris County responded: "…Harris County has no authority to control which law enforcement agency conducts law enforcement activities on the Sam Houston Tollway. Besides the Harris County Constables' offices, the Harris County Sheriff's Office, the Houston Police Department (within the City of Houston), the Pasadena Police Department and the Texas Department of Public Safety all have jurisdiction over some or all of the Sam Houston Parkway. The authority of these various agencies is determined by state law.

Harris County has not delegated authority to the constable' offices to conduct toll road enforcement. The Harris County Constable's Offices already had that authority under Texas law. Harris County simply agreed to reimburse the constable's offices for their costs of enforcement in order to assure a regular police presence on the roadways." *See* Doc. 44-13, pages 16-17. A regular police presence on the roadway is for the common good.

There are no issues remaining for trial because former Constable Camus is not a Harris County policymaker as a matter of law. Accordingly, Harris County is entitled to summary judgment. FED. R. CIV. P. 56.

**D. Even if Former Constable Camus is a Harris County Policymaker, Harris County Is Still Entitled to Summary Judgment Because Deputy Felix Did Not Violate Barnes' Constitutional Rights**

For all of the reasons set forth in Section V.A of Defendants Consolidated Motion to Dismiss (Doc. 42 at 11–22), there was no violation of Barnes' civil rights.

**E. Plaintiffs "Rubber Stamp" Exception Is Inapplicable in this Context**

Citing to *Murphy v. Butler*, 512 F. Supp. 2d 975, 990 (S.D. Tex. 2007) (Miller, J.), Plaintiffs assert that "the unconstitutional acts involved in this case must still be imputed upon Harris County under the Rubber Stamp Exception." (Doc. 44 at 29). As shown above, there was no constitutional violation so this theory fails. Second, the *Murphy* case expressly states that the so-called "rubber stamp" exception would be inapplicable to a Texas constable if the alleged constitutional violation arose out of that constable's "limited duties of making arrests, serving warrants, and serving process." *Id.* (citing *Rhode v. Denson*, 776 F.2d 107, 109 (5th Cir. 1985)). The constitutional violations alleged here obviously arise out of a Texas constable's law enforcement duties and do not involve some ancillary function like hiring and firing employees by commissioner's court. Plaintiffs' position is therefore meritless and Harris County is entitled to summary judgment.

**F. There Is No Triable Issue Concerning an Informal Policy, Custom, or Practice of Harris County Constable Precinct 5**

Although there is no evidence to support the assertion, Plaintiffs claim that Harris County Constable Precinct 5 has informal policies to fire at moving vehicles, jump onto fleeing vehicles, fire blindly into moving vehicles, and fire at moving vehicles without giving sufficient warning. (Doc. 44 at 31-33). Plaintiffs adduce no evidence that such policies exist and elicited no testimony from any witness that such policies exist. Plaintiffs' assertions are nothing more than an attempt to hold Harris County liable on a *respondeat superior* theory for what Plaintiffs allege Deputy Felix did wrong. Such a theory of recovery is foreclosed as a matter of law by *Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).

Additionally, to establish their claim on this theory, Plaintiffs must prove the actual or constructive knowledge of a final policymaker. They must also establish a "pattern of abuses that transcends the error made in a single case." *See Piotrowski v. City of Houston*, 237 F. 3d 567, 582 (5th Cir. 2001). A pattern requires similarity and specificity; "[p]rior indicators cannot be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *See Estate of Davis ex rel McCally v. City of North Richard Hills*, 406 F. 3d 375, 383 (5th Cir. 2005). A pattern also requires "sufficiently numerous prior incidents" as opposed to "isolated incidents". *See McConney v City of Houston*, 863 F. 2d 1180, 1184 (5th Cir 1989).

Plaintiffs have completely failed to establish the actual or constructive knowledge of a final policymaker for Harris County. They have also failed to establish a pattern of any kind, much less one sufficient to impose liability on Harris County. Harris County is entitled to summary judgment on this theory of liability.

**G. Harris County is Entitled to Summary Judgment on Plaintiffs' Ratification Theory**

As clearly set forth in Defendants underlying motion and above, former Constable Camus was not a final policymaker for Harris County with respect to his law enforcement duties under well-established Texas law. Accordingly, former Constable Camus therefore could not, as a matter of law, ratify any deputy constable's law enforcement activities on behalf of Harris County. Plaintiffs' ratification theory fails because it rests on this erroneous assumption.

The Supreme Court has cautioned that ratification liability must be limited to prevent it from becoming a basis for a municipality's liability for its employees. In *Praprotnik*, the Supreme Court explained:

> Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy. It is equally consistent with a presumption that the subordinates are faithfully attempting to comply with the policies that are supposed to guide them. It would be a different matter if a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker. It would also be a different matter if a series of decisions by a subordinate official manifested a 'custom or usage' of which the supervisor must have been aware. In both cases, the supervisor could realistically be deemed to have adopted a policy that happened to have been formulated or initiated a by a lower-ranking official. But the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority . . . .

*Praprotnik*, 485 U.S. at 130. Plaintiffs' blanket assertion that any approval from the authorized policymaker constitutes ratification is therefore incorrect. Ratification is limited to "extreme factual situations." *See Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986). The alleged approval of an investigative report does not create a fact issue on the ratification question because such an approval cannot be construed as the defense of unlawful conduct or the approval of reckless police behavior. *Id.*

Plaintiffs' also rely on an excerpt from the Rule 30(b)(6) Deposition of Harris County Constable Precinct 5 Chief Terry Allbritton to support the ratification theory. (Doc. 44 at 39–40). This testimony is unavailing to Plaintiffs because (1) Deputy Felix did not act unlawfully; and (2)

even if an unlawful act is assumed, the approval of an individual deputy's discretionary law enforcement activities does not constitute an office-wide policy approving of reckless police conduct. Additionally, Chief Allbritton is not a final policymaker for Harris County and Plaintiffs' did not include the topic of ratification in their Rule 30(b)(6) deposition notice and Chief Allbritton was not offered as a corporate representative on that topic. *See* Exhibit 7, Plaintiff's Rule 30(b)(6) Deposition Notice, Exhibit 8, Defendants' Designation of Corporate Witnesses. Accordingly, Chief Allbritton's personal opinion on this topic is immaterial and does not rise to the level of creating a genuine issue for trial.

**H. Plaintiffs Have Apparently Abandoned their Claim for Relief Under the Texas Tort Claims Act**

Plaintiffs' Response does not address the claims under the Texas Tort Claims Act at all. Accordingly, Harris County is entitled to summary judgment on this claim for the reasons set forth in the underlying motion. (*See* Doc. 44 at 34).

|  |  |
|---|---|
|  | Respectfully submitted, |
| OF COUNSEL: | /s/ *Mary E. Baker* |
|  | MARY E. BAKER |
| VINCE RYAN | Federal I.D. No. 7647 |
| HARRIS COUNTY ATTORNEY | Texas Bar No. 08534000 |
|  | Senior Assistant County Attorney |
|  | 1019 Congress, 15th Floor |
|  | Houston, Texas 77002 |
|  | Telephone: (713) 274-5133 |
|  | Facsimile: (713) 755-8924 |
|  | Email: mary.baker@cao.hctx.net |
|  | ATTORNEY IN CHARGE |
|  |  |
|  | CAMERON A. HATZEL |
|  | Assistant County Attorney |
|  | Federal I.D. No. 1128943 |
|  | Texas Bar No. 24074373 |
|  | 1019 Congress, 15th Floor |
|  | Houston, Texas 77002 |
|  | Telephone: (713) 274-5376 |

Facsimile: (713) 755-8924
Email: cameron.hatzel@cao.hctx.net
ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2020, a true and correct copy of the foregoing instrument was served on all parties of record by filing with the Court's ECF/CM system.

/s/ *Mary E. Baker*
MARY E. BAKER