United States District Court
Southern District of Texas
**ENTERED**
August 29, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANICE HUGHES BARNES, *et al*, | § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-725 |
| | § § | |
| ROBERTO FELIX JR., *et al*, | § § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants' Second Motion for Summary Judgment (the "Motion") (Doc. #135), Plaintiff Janice Hughes Barnes' Response (Doc. #147), Defendants' Reply and Objections to Plaintiff Janice Hughes Barnes' Response (Doc. #150), Plaintiff Janice Hughes Barnes' Response to Defendants Objections (Doc. #153), Plaintiff Tommy Barnes' Response to the Motion (Doc. #155), and Defendants' Reply (Doc. #156). Having reviewed the parties' arguments and applicable law, the Court grants the Motion.

### I.   Background

On April 28, 2016, Roberto Felix Jr. ("Felix"), a traffic enforcement officer for the Harris County Precinct 5 Constable's Office, initiated a traffic stop of Ashtian Barnes ("Barnes") that ended in Felix fatally shooting Barnes. Doc. #135, Ex. 1 ¶¶ 4, 5. Full details of the events that led to Barnes' death can be found in the Court's March 31, 2021 Order, which granted summary judgment for Felix and Harris County, Texas (collectively "Defendants") on Plaintiffs Janice Hughes Barnes and Tommy Barnes' deadly force claims after finding that Felix's use of deadly force was not objectively unreasonable under established Fifth Circuit precedent that this Court is obligated to apply. Doc. #49. Defendants now move for summary judgment on Plaintiffs' remaining 42 U.S.C. § 1983 excessive force claims that are based on Felix "drawing his firearm and pointing it directly at and

inches away from [Barnes'] head," allegedly "without any reasonable suspicion that [Barnes] posed a threat." Doc. #135 and Doc. #66 at 1. Unlike Plaintiffs' since-dismissed deadly force claim that was based on Felix shooting his gun, Plaintiffs' excessive force claim is based on Felix's decision to brandish his gun. *See* Doc. #49 and Doc. #66 at 1. Relevant to this claim are the following facts.

At about 2:40 p.m. on April 28, 2016, Felix heard a radio broadcast from the Harris County Toll Road Authority regarding a prohibited vehicle on the Sam Houston Tollway. Doc. #135, Ex. 1 ¶ 4. At about 2:43 p.m., Felix located the vehicle and initiated the traffic stop. *Id.* ¶ 5; *Id.*, Ex. 2 at 00:49. The driver of the vehicle, Barnes, pulled over to the left shoulder of the Tollway "within seconds" of Felix activating his emergency lights and Felix parked his car behind the vehicle. *Id.*, Ex. 2 at 00:51, Ex. 3 at 30:16–22. At 2:44, Felix exited his vehicle and approached Barnes, who had already rolled down his window. *Id.*, Ex. 2 at 01:30; Doc. #147, Ex. 3 at 34:1–10. When Felix asked for Barnes' driver's license and proof of insurance, Barnes informed him that he did not have his license and that he had rented the vehicle a week earlier in his girlfriend's name. Doc. #135, Ex. 1 ¶ 6. Barnes began reaching around the vehicle and rummaging through papers, which resulted in Felix warning Barnes to stop "digging around" multiple times. *Id.* ¶ 7, Ex. 2 at 02:30.

Barnes then told Felix he might have identifying information in the trunk of the vehicle. *Id.*, Ex. 2 at 02:40. Felix asked Barnes to open his trunk, which Barnes did before he took his keys out of the ignition and turned the vehicle off. *Id.* at 02:45–52. Before heading to the trunk, Felix asked Barnes to exit the vehicle and stepped in between Barnes and his now open driver side door. *Id.* at 02:56. After retrieving his keys, Barnes then turned his vehicle back on. *Id.* at 03:03. One second letter, Felix drew his firearm and pointed it at Barnes. *Id.* at 03:04. As Barnes' vehicle began moving, Felix yelled "don't fucking move" twice. *Id.* at 3:05. Because the excessive force claim is based solely upon Felix brandishing his firearm, the fatal events that followed the brandishing are not

relevant to the claim or Motion now before the Court. *See* Doc. #135 and Doc. #66 at 1. Rather, Defendant's Motion argues that Felix is entitled to qualified immunity and because he did not use excessive force, all municipal liability claims against Harris County must fail as well. Doc. #135.

## II. Legal Standard

### a. Federal Rule of Civil Procedure 56

Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. When a public official raises "a good faith assertion of qualified immunity," the plaintiff has the burden of showing that the defense is not available. *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 329–30 (5th Cir. 2020) (citing *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)). To do so, the plaintiff must first demonstrate "that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief for a constitutional injury." *Id.* at 330. Once qualified immunity is involved, "the plaintiff's version of those disputed facts must also constitute a violation of clearly established law." *Id.*

As with any motion for summary judgment, the court "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quoting *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009)). But the court will "assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Id.* (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)).

### b. Section 1983

Section 1983 imposes liability for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" caused by any person acting "under color of any statute,

ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. The injured party may bring may a § 1983 claim against a state actor in their individual or official capacity or against a governmental entity of the state. *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016), *as revised* (June 16, 2016) (citing *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)). To prevail on a claim under § 1983, the plaintiff must establish (1) a violation of a right secured by federal law (2) that "was committed by a person acting under color of state law." *Id.* (quoting *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013)).

### 1. Qualified Immunity Defense

When a public official asserts qualified immunity against a § 1983 claim, the court must ask (1) whether the alleged conduct violated a constitutional right and (2) "whether the right in question was clearly established at the time of the alleged violation" as to put the official "on notice of the unlawfulness of his or her conduct." *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019), *as revised* (Aug. 21, 2019), *cert. denied sub nom. Hunter v. Cole*, 141 S. Ct. 111, 207 L. Ed. 2d 1051 (2020) (citing *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (per curiam)) (internal quotation marks omitted). "The officer is entitled to qualified immunity if there is no violation, or if the conduct did not violate law clearly established at the time." *Id.* The Court's analysis proceeds under the first prong—whether Felix violated Barnes's constitutional right to be free from excessive force.

### III. Analysis

Defendants move for summary judgment on Plaintiffs' Section 1983 excessive force claim, arguing in part that it was objectively reasonable for Felix to draw and point his weapon in light of Barnes' conduct. Any claim "that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard." *Graham v. Connor*, 490 U.S. 386,

395 (1989). To establish a Fourth Amendment violation based on an officer's use of excessive force, the plaintiff must show "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018). "The second and third elements collapse into a single objective-reasonableness inquiry, guided by the following *Graham* factors: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (cleaned up). Excessive force claims are necessarily fact-intensive; whether the force used is excessive or unreasonable depends on the facts and circumstances of each particular case." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quotation omitted). "The court must adopt the perspective of a reasonable officer on the scene, rather than judge with the 20/20 vision of hindsight." *Bros. v. Zoss*, 837 F.3d 513, 518 (5th Cir. 2016). "[T]he 'reasonableness' inquiry . . . is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

Here, the dash cam video shows the following:

- At 2:45:28, Felix orders Barnes to open the trunk of his vehicle. At this time, Barnes' left blinker is still on, indicating that keys are still in the ignition.
- At 2:45:33, Barnes opens the trunk of the vehicle.
- At 2:45:36, Barnes' left blinker turns off.
- At 2:45:43, Felix asks Barnes to get out of the vehicle.
- At 2:45:44, Barnes' driver side door is opened.
- At 2:45:47, Barnes' left blinker turns back on.
- At 2:45:48, Felix draws his weapon.
- At 2:45:49, Felix points his weapon at Barnes and begins shouting "don't fucking move" as Barnes' vehicle begins moving.

Doc. #135, Ex. 2 at 02:45–03:05.

Plaintiffs have not cited any evidence that would obfuscate the events depicted in the dash cam recording. Rather, Plaintiffs point to Felix's inconsistent testimony regarding what conduct by Barnes prompted Felix to draw his weapon. It is undisputed that before Felix drew his weapon, Barnes had turned off his car and put his keys in the center console. Doc. #147 at 7, Ex. 4 at 74:20–25. As to what caused Felix to draw his weapon, Plaintiffs note that Felix: (1) stated in his 2016 witness statement that he drew his weapon after seeing Barnes reach for his keys, (2) testified to a grand jury that he drew his weapon when he saw Barnes reaching down, (3) testified at his deposition that he drew his weapon as Barnes was putting the key in the ignition, and (4) stated in his affidavit that he drew his weapon when Barnes grabbed his keys and turned on the vehicle. Doc. #147 at 7, 16. Though there are slight differences in this testimony, all four scenarios are consistent with the dash cam video, which shows that four seconds after Felix asked Barnes to exit the vehicle, Barnes was still in the vehicle and the vehicle's blinker turned back on. Doc. #135, Ex. 2 at 02:58–03:03.

Though Plaintiffs argue that "Barnes reaching down after Felix opened his door . . . is just as consistent with him preparing to leave the rental car as refusing Felix's order," they offer no explanation as to why a passenger would need to reach down before exiting a vehicle. *See* Doc. #147 at 15. Conversely, the Fifth Circuit has found that an officer was justified in fatally shooting a driver who "reached down to the seat or floorboard of his car" after the officer ordered the driver to exit the vehicle. *Young v. City of Killeen, Tex.*, 775 F.2d 1349, 1351, 1353 (5th Cir. 1985). As such, the Court cannot say that pointing a weapon at a driver who "reaches down" for an unknown reason after the officer orders the driver to exit the vehicle is unreasonably excessive. *See id.*

Plaintiffs cite to two Fifth Circuit district court cases where qualified immunity was denied on an excessive force claim based on the brandishing of a firearm. The first is *Manis v. Cohen*, wherein the district court denied summary judgment based on conflicting testimony as to whether an

officer pointed his gun at the head of a man lawfully towing the officer's car or pointed the gun at the vehicle itself. CIV.A.3:00CV1955-P, 2001 WL 1524434, at *1–2, *8 (N.D. Tex. Nov. 28, 2001). The second is *Flores v. Rivas*, wherein the district court denied a motion to dismiss an excessive force claim because the complaint alleged that an officer brandished a weapon at numerous children who had committed no crime, gave no reason to believe they had committed a crime, had not done anything to threaten the safety of the officer or general public, and did nothing to resist or evade arrest. No. EP-18-CV-297-KC, 2020 WL 563799, at *7 (W.D. Tex. Jan. 31, 2020). Both of these cases are easily distinguishable.

Here, the dash cam footage shows that Felix did not draw his weapon until Barnes turned his vehicle back on despite Felix's order to exit the vehicle. Doc. #135, Ex. 2 at 02:58–03:03. Regardless of whether Felix drew his weapon before or after the vehicle started moving, Plaintiffs offer no lawful explanation for Barnes turning his car back on after Felix ordered him to exit the vehicle. *See* Doc. #147 at 16; *c.f. Manis*, 2001 WL 1524434, at *1 (explaining that the driver the officer pointed his gun at had the right to tow the officer's vehicle). Though Plaintiffs argue that there is only self-serving evidence that Barnes was attempting to flee, Plaintiffs do not offer any non-inimical explanation for Barnes's conduct. *See* Doc. #147 at 16. Moreover, even if such a reason exists, it was not objectively unreasonable for Felix to believe that Barnes was attempting to flee when Barnes turned his car on despite Felix's order to exit the vehicle. *C.f. Flores*, 2020 WL 563799, at *7 (noting that the children the officer pointed his weapon at did nothing to resist or evade arrest). As such, the Court cannot say that Felix pointing his weapon at Barnes when Barnes turned on his vehicle despite Felix's order was unreasonably excessive in violation of the Fourth Amendment.

Accordingly, because Plaintiffs have failed to demonstrate a genuine issue of material fact as to a constitutional injury, their § 1983 claim fails. *See Joseph*, 981 F.3d at 329–30. Barring a

7

constitutional injury, Plaintiffs also cannot assert municipal liability against Harris County. *See Horvath v. City of Leander*, 946 F.3d 787, 793 (5th Cir. 2020), *as revised* (Jan. 13, 2020) (quoting *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)) ("Municipal liability under § 1983 requires proof of (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose moving force is the policy or custom.").

## IV. Conclusion

The Court is cognizant of the very narrow question before it: is there a genuine issue of material fact as to whether Felix violated Barnes' Fourth Amendment rights when he pointed his firearm at Barnes? For the reasons explained above, the Court finds that the answer to that question is no. The Court continues to invite the Fifth Circuit to review its very narrow approach to deadly-force claims. *See* Doc. #49 at 12. Nevertheless, the only issue before the Court today was Felix's decision to brandish his gun, not his decision to shoot it. Because Barnes did not comply with Felix's order to exit his vehicle and instead turned his vehicle on, it was not excessively unreasonable for Felix to brandish his weapon in an attempt to stop Barnes from fleeing. Accordingly, the Motion is GRANTED. This case is hereby DISMISSED.

It is so ORDERED.

AUG 2 9 2022
Date

The Honorable Alfred H. Bennett
United States District Judge