# United States Court of Appeals
# for the Fifth Circuit

United States Courts
Southern District of Texas
FILED
February 14, 2024
Nathan Ochsner, Clerk of Court

United States Court of Appeals
Fifth Circuit
**FILED**
January 23, 2024
Lyle W. Cayce
Clerk

No. 22-20519

JANICE HUGHES BARNES, *Individually and as Representative of* THE ESTATE OF ASHTIAN BARNES, *Deceased*; TOMMY DUANE BARNES,

*Plaintiffs—Appellants*,

*versus*

ROBERTO FELIX, JR.; COUNTY OF HARRIS, TEXAS,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-725

---

Before HIGGINBOTHAM, SMITH, and ELROD, *Circuit Judges*.
PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

Officer Roberto Felix, Jr., a traffic enforcement officer for the Harris County Precinct 5 Constable's Office, fatally shot Ashtian Barnes on April 28, 2016, following a lawful traffic stop. Appellants Janice Hughes Barnes and Tommy Duane Barnes filed suit on behalf of Barnes, their son, asserting claims against defendants Officer Felix and Harris County under 42 U.S.C. § 1983. The district court granted Defendants' motion for summary judgment, finding no Fourth Amendment constitutional violation. Faithful to this Circuit's moment of threat doctrine, we AFFIRM.

No. 22-20519

# I.

## A.

Officer Roberto Felix, Jr. fatally shot Ashtian Barnes on April 28, 2016, following a lawful traffic stop. The facts leading up to the shooting are undisputed. At about 2:40 p.m., Officer Felix heard a radio broadcast from the Harris County Toll Road Authority giving the license plate number of a vehicle on the highway with outstanding toll violations. Spotting a Toyota Corolla with the matching plate on the Tollway, he initiated a traffic stop by engaging his emergency lights. Ashtian Barnes, the driver, pulled over to the median on the left side of the Tollway out of the immediate traffic zone. Officer Felix parked his car behind the Corolla.

Officer Felix approached the driver's side window and asked Barnes for his driver's license and proof of insurance. Barnes replied that he did not have the documentation and that the car had been rented a week earlier in his girlfriend's name. During this interaction, Barnes was "digging around" in the car. Officer Felix warned Barnes to stop doing so and, claiming that he smelled marijuana, asked Barnes if he had anything in the vehicle Officer Felix should know about. In response, Barnes turned off the vehicle, placing his keys near the gear shift, and told Officer Felix that he "might" have the requested documentation in the trunk of the car. What happened next was captured on Officer Felix's dash cam. The district court found:[1]

---

[1] "Much of the incident, including its unfortunate conclusion, was recorded by video cameras. Although courts must construe evidence in light most favorable to the nonmoving party, we will not adopt a plaintiff's characterization of the facts where unaltered video evidence contradicts that account." *Thompson v. Mercer*, 762 F.3d 433, 435 (5th Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

- At 2:45:28, Felix orders Barnes to open the trunk of his vehicle. At this time, Barnes's left blinker is still on, indicating that the keys are still in the ignition.
- At 2:45:33, Barnes opens the trunk of the vehicle.
- At 2:45:36, Barnes's left blinker turns off.
- At 2:45:43, Felix asks Barnes to get out of the vehicle.
- At 2:45:44, Barnes's driver side door opens.
- At 2:45:47, Barnes's left blinker turns back on.
- At 2:45:48, Felix draws his weapon.
- At 2:45:49, Felix points his weapon at Barnes and begins shouting "don't fucking move" as Barnes's vehicle begins moving.

At this point, Officer Felix stepped onto the car with his weapon drawn and pointed at Barnes, and—as Appellants claim and as supported by the footage—"shoved" his gun into Barnes's head, pushing his head hard to the right. Then, the car started to move. While the car was moving, Officer Felix shot inside the vehicle with "no visibility" as to where he was aiming.[2] The next second, Officer Felix fired another shot while the vehicle was still moving. After two seconds, the vehicle came to a full stop, and Officer Felix yelled "shots fired!" into his radio. Officer Felix held Barnes at gunpoint until backup arrived while Barnes sat bleeding in the driver's seat. At 2:57 p.m., Barnes was pronounced dead at the scene.

The Homicide Division of the Houston Police Department investigated and presented a report to the Harris County District Attorney's Office, who presented the report to a grand jury on August 26 and August 31,

---

[2] Officer Felix had "no visibility," i.e., could not see into the car, because his head was outside and above the roof of the car while he held on to the car frame.

2016. The grand jury returned a "no bill;" that is, it found no probable cause for an indictment. Harris County Precinct 5 Constable's Office also conducted an internal investigation and found that Officer Felix had not violated its Standard Operating Procedures.

## B.

Appellants Janice Hughes Barnes and Tommy Duane Barnes, Ashtian Barnes's parents, filed suit on December 29, 2017, in state court on behalf of their son, asserting claims against defendants Officer Felix and Harris County under 42 U.S.C. § 1983 and the Texas Tort Claims Act.[3] Defendants removed the action to federal district court on March 7, 2018.

Defendants moved for summary judgment, arguing that Officer Felix did not violate Barnes's constitutional rights and was entitled to qualified immunity. Defendants argued that because Officer Felix reasonably feared for his life when Barnes's vehicle was moving, it was reasonable to deploy deadly force. In response, Plaintiffs argued Officer Felix's use of force was unreasonable because, even if Barnes attempted to flee the scene, he did not pose a threat justifying deadly force.

The district court granted Defendants' motion for summary judgment and found that there was no genuine dispute of fact material as to constitutional injury. First, the district court found that, although there were some inconsistencies as to Officer Felix's "motivations" for shooting Barnes, the dash cam footage resolved all lingering genuine disputes of material fact. According to the district court, "Plaintiffs have not cited any

---

[3] On appeal, Appellants have abandoned their claims under the Texas Torts Claims Act.

evidence that would obfuscate the events depicted in the dash cam recording." It explained:

> [T]he dash cam footage shows that Felix did not draw his weapon until Barnes turned his vehicle back on despite Felix's order to exit the vehicle. Regardless of whether Felix drew his weapon before or after the vehicle started moving, Plaintiffs offer no lawful explanation for Barnes turning his car back on after Felix ordered him to exit the vehicle.

Second, the court found that Officer Felix's actions prior to the moment of threat, including that Officer Felix "jumped onto the door sill," had "no bearing" on the officer's ultimate use of force. Third, the court determined that the moment of threat occurred in the two seconds before Barnes was shot. At that time, "[Officer] Felix was still hanging onto the moving vehicle and believed it would run him over," which could have made Officer Felix "reasonably believe his life was in imminent danger."

Ultimately, the district court found that because "Barnes posed a threat of serious harm to Officer Felix" in the moment the car began to move, Officer Felix's use of deadly force was not excessive, "presumptively reasonable under controlling Fifth Circuit precedent," and did not cause a constitutional injury. Finding no genuine dispute of material fact as to the constitutional injury, the district court granted Officer Felix's motion for summary judgment. The district court also dismissed the claim against Defendant Harris County. On August 8, 2022, the district court issued an order clarifying that there was "no genuine issue of material fact as to whether [Officer] Felix violated Barnes's Fourth Amendment rights when he pointed his firearm at Barnes[.]"[4]

---

[4] Appellants only appeal the first grant of summary judgment, not the subsequent August 8, 2022 order.

No. 22-20519

Appellant Janice Hughes Barnes timely appealed on September 28, 2022, claiming: (1) the district court erred in concluding that there was no dispute of material fact because there were inconsistencies between the dash cam video and Felix's own statements and testimony; and (2) the district court erred in granting summary judgment because the facts as alleged were sufficient to find that Officer Felix violated Barnes's constitutional rights as a matter of law.

Appellant Tommy Duane Barnes timely filed a separate, pro se brief on February 7, 2023, incorporating "the findings of Adam Fomby" and alleging claims near identical to those of Appellant Janice Barnes's. Defendants do not address Tommy Barnes's pro se brief.

## II.

On summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law;" the court reviews the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in its favor.[5]

## III.

Bound by this Circuit's precedent, we affirm the district court's order holding that there is no genuine dispute of material fact as to constitutional injury. As the district court explained, we may only ask whether Officer Felix "was in danger '*at the moment of the threat*' that caused him to use deadly force against Barnes." In this circuit, "it is well-established that the excessive-force inquiry is confined to whether the officers or other persons were in danger at the moment of the threat that resulted in the officers' use

---

[5] FED. R. CIV. P. 56(a); *see also Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009) (per curiam).

of deadly force."[6] This "moment of threat" test means that "the focus of the inquiry should be on the act that led the officer to discharge his weapon."[7] "Any of the officers' actions leading up to the shooting are not relevant for the purposes of an excessive force inquiry in this Circuit."[8]

The district court here determined that the moment of threat occurred in the two seconds before Barnes was shot. At that time, "[Officer] Felix was still hanging onto the moving vehicle and believed it would run him over," which could have made Officer Felix "reasonably believe his life was in imminent danger." *Harmon v. City of Arlington* presented a similar fact pattern, in which an officer was perched on the running board of a runaway vehicle when the officer shot the fleeing driver.[9] Finding no constitutional violation, the opinion noted that the "brief interval—when [the officer] is clinging to the accelerating SUV and draws his pistol on the driver—is what the court must consider to determine whether [the officer] reasonably believed he was at risk of serious physical harm."[10] Similarly here, Officer Felix was still hanging on to the moving vehicle when he shot Barnes. Under *Harmon's* application of our Circuit's "moment of threat" test, Felix did not violate Barnes's constitutional rights. We focus on the precise moment of the threat as required and affirm the district court's judgment.

## IV.

One of the required elements of a municipal liability claim is a showing of a "violation of constitutional rights whose moving force is the policy or

---

[6] *Amador v. Vasquez*, 961 F.3d 721, 728 (5th Cir. 2020).

[7] *Id.* (cleaned up).

[8] *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (cleaned up).

[9] *Harmon v. City of Arlington*, 16 F.4th 1159, 1162 (5th Cir. 2021).

[10] *Id.* at 1164.

No. 22-20519

custom [of the municipality]."[11] As the district court found no constitutional injury, it rightfully did not reach the Barnes' municipal liability claim. Finding no constitutional injury ourselves, we affirm the grant of summary judgment to Harris County.

\* \* \* \* \*

Faithful to Circuit precedent on the moment of threat analysis, we AFFIRM the district court's judgment.

---

[11] *Horvath v. City of Leander*, 946 F.3d 787, 793 (5th Cir. 2020) (citing *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)).

Case 4:18-cv-00725   Document 194   Filed on 02/14/24 in TXSD   Page 9 of 14

No. 22-20519

PATRICK E. HIGGINBOTHAM, *Circuit Judge*, concurring:

A routine traffic stop has again ended in the death of an unarmed black man, and again we cloak a police officer with qualified immunity, shielding his liability. The district court rightfully found that its reasonableness analysis under the Fourth Amendment was circumscribed to the "precise moment" at which Officer Felix decided to use deadly force against Barnes. I write separately to express my concern with this Circuit's moment of threat doctrine, as it counters the Supreme Court's instruction to look to the totality of the circumstances when assessing the reasonableness of an officer's use of deadly force.

To these eyes, blinding an officer's role in bringing about the "threat" precipitating the use of deadly force lessens the Fourth Amendment's protection of the American public, devalues human life, and "frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment."[1] *Tennessee v. Garner*'s[2] stricture on the taking of a life only to protect one's life or the life of another is the baseline of the Supreme Court's later validation of pretextual stops in *Whren v. United States*,[3] and in the following term *Maryland v. Wilson*, allowing an officer without more than

---

[1] *Abraham v. Raso* rejected reasoning in prior cases that prevented the court from considering any of the circumstances before the exact moment deadly force is used:

> We reject the reasoning . . . because we do not see how these cases can reconcile the Supreme Court's rule requiring examination of the "totality of the circumstances" with a rigid rule that excludes all context and causes prior to the moment the seizure is finally accomplished. "Totality" is an encompassing word. It implies that reasonableness should be sensitive to all of the factors bearing on the officer's use of force.

183 F.3d 279, 288 (3d Cir. 1999).

[2] 471 U.S. 1, 21 (1985).

[3] 517 U.S. 806, 810 (1996).

9

pretext to order the driver of the then lawfully stopped car to exit their vehicle.[4] Sound on their face but unforeseen in their future came the reality that these cases brought fuel to a surge of deadly encounters between the police and civilians.[5] This reality makes plain the wisdom of *Garner*'s baseline and that it ought not be further redrawn by refusing to look to the totality of the circumstances when a stop leads to the taking of a life.

## I.

Barnes was stopped for a traffic violation—his girlfriend's rental car had several outstanding toll tag violations, none of which are arrestable offenses under Section 370.177 of the Texas Transportation Code.[6] While Barnes was not then a fleeing *felon* at the moment Officer Felix deployed deadly force, the starting point of the requisite Fourth Amendment analysis must still be *Garner*, which announced the bedrock principle that it is unreasonable for an officer to use deadly force to stop a fleeing suspect *unless* the suspect poses an immediate physical danger to the officer or others.[7] To

---

[4] 519 U.S. 408 (1997).

[5] "Today, traffic stops and the use of deadly force are too often one and the same—with Black and Latino drivers overrepresented among those killed—and have been sanctioned by numerous counties and major police departments." *Crane v. City of Arlington*, No. 21-10644, 2022 WL 4592035, at *1 (5th Cir. Sept. 30, 2022) (citation omitted); Sam Levin, *US Police Have Killed Nearly 600 People in Traffic Stops Since 2017, Data Shows*, GUARDIAN (Apr. 21, 2022), https://www.theguardian.com/us-news/2022/apr/21/us-police-violence-traffic-stop-data.

[6] TEX. TRANSP. CODE ANN. § 370.177 ("[T]he operator of a vehicle, other than an authorized emergency vehicle as defined by Section 541.201, that is driven or towed through a toll collection facility of a turnpike project shall pay the proper toll. The operator of a vehicle who drives or tows a vehicle through a toll collection facility and does not pay the proper toll commits an offense. An offense under this subsection is a misdemeanor punishable by a fine not to exceed $250.")

[7] 471 U.S. at 21.

assess whether Officer Felix was justified in his use of deadly force, *Garner* requires this Court to look to the "totality of circumstances."[8] Yet we do not.

We, and three of our sister courts, have narrowed the totality of circumstances inquiry by circumscribing the reasonableness analysis of the Fourth Amendment to the precise millisecond at which an officer deploys deadly force.[9] "[Our] excessive force inquiry is confined to whether the [officer] was in danger *at the moment of the threat* that resulted in the [officer]'s shooting.[10] Under this "moment of threat" doctrine, courts are prohibited from looking to "what has transpired up until the moment of the shooting itself[;]"[11] instead, the sole focus is on "the act that led the officer[] to discharge his weapon."[12] The moment of threat doctrine trims *Garner* with predictable results: by cabining the Court's analysis, it turns to the issue of qualified immunity after eliding the reality of the role the officers played in bringing about the conditions said to necessitate deadly force. "Necessity," either to protect an officer or another, requires that we be sensitive to all of the circumstances bearing on an officer's use of force. Revisiting our Circuit's precedents on the moment of threat would only return this Circuit to *Garner*'s metric of necessity—a totality of the circumstances.

---

[8] *Id.* at 9.

[9] The district court found "'the moment of the threat' occurred *after* Felix jumped onto the door sill about 2:45:50, in the two seconds before Felix fired his first shot."

[10] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 493 (5th Cir. 2001) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992)).

[11] *Fraire*, 957 F.2d at 1267.

[12] *Amador v. Vasquez*, 961 F.3d 721, 728 (5th Cir. 2020).

No. 22-20519

## II.

The Fifth Circuit's approach to the reasonableness analysis is the minority position, joined by the Second, Fourth, and Eighth Circuits. Indeed, a majority of circuits have adopted a distinct framework for assessing the reasonableness of an officer's use of deadly force.[13]

---

[13] *See, e.g., St. Hilaire v. City of Laconia*, 71 F.3d 20, 26 (1st Cir. 1995) ("We first reject defendants' analysis that the police officers' actions need be examined for 'reasonableness' under the Fourth Amendment only at the moment of the shooting. We believe that view is inconsistent with Supreme Court decisions and with the law of this Circuit."); *Carswell v. Borough of Homestead*, 381 F.3d 235, 243 (3d Cir. 2004) ("All of the events leading up to the pursuit of the suspect are relevant."); *Abraham v. Raso*, 183 F.3d 279, 292 (3d Cir. 1999) (considering the totality of circumstances even in the context of deadly force); *Kirby v. Duva*, 530 F.3d 475, 482 (6th Cir. 2008) ("Where a police officer unreasonably places himself in harm's way, his use of deadly force may be deemed excessive."); *Est. of Starks v. Enyart*, 5 F.3d 230, 234 (7th Cir. 1993) ("If a fleeing felon is converted to a 'threatening' fleeing felon *solely* based on the actions of a police officer, the police should not increase the degree of intrusiveness."); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018) ("While a Fourth Amendment violation cannot be established 'based merely on bad tactics that result in a deadly confrontation that could have been avoided,' the events leading up to the shooting, including the officers [sic] tactics, are encompassed in the facts and circumstances for the reasonableness analysis.") (internal citations omitted); *Fogarty v. Gallegos*, 523 F.3d 1147, 1159-60 (10th Cir. 2008) ("[W]e must pay 'careful attention' to factors such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' We also consider whether an officer's own 'reckless or deliberate conduct' in connection with the arrest contributed to the need to use the force employed.") (citations omitted) (internal citation omitted) (cleaned up); *Ayers v. Harrison*, 650 F. App'x 709, 719 (11th Cir. 2016) ("Officer Harrison's argument that our precedent precluded Ms. Ayers from advancing an 'officer created danger' theory at trial is both factually and legally incorrect."); *Wardlaw v. Pickett*, 1 F.3d 1297, 1303 (D.C. Cir. 1993) ("[W]hatever the circumstances prompting law enforcement officers to use force, whether it be self-defense, defense of another or resistance to arrest, where, as here, a fourth amendment violation is alleged, the inquiry remains whether the force applied was reasonable."). *But see Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir. 1996) ("Officer Proulx's actions leading up to the shooting are irrelevant to the objective reasonableness of his conduct at the moment he decided to employ deadly force."); *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005) ("The reasonableness of the officer's actions in creating the dangerous situation is not relevant to the Fourth

No. 22-20519

Whether an officer's use of force was excessive is "necessarily [a] fact-intensive" endeavor that "depends on the facts and circumstances of each particular case."[14] As the Supreme Court observed in *Scott v. Harris*, the Fourth Amendment analysis is necessarily a "factbound morass of reasonableness."[15] Yet the moment of threat doctrine starves the reasonableness analysis by ignoring relevant facts to the expense of life. The case before us is paradigmatic: we are prohibited from considering Officer Felix's decision to jump onto the sill of the vehicle with his gun already drawn, and—in the span of two seconds—his decision to elevate and fire his handgun into the vehicle—this for driving with an outstanding toll violation. Officer Felix's role in escalating the encounter is "irrelevant" in our Circuit.

If the moment of threat is the sole determinative factor in our reasonableness analysis, references to our supposed obligation to consider the totality of circumstances are merely performative.[16] Isolating the police-civilian encounter to the moment of threat begs the *Garner* question. That is, the moment of threat approach removes the consideration of the entire

---

Amendment analysis; rather, reasonableness is determined based on the information possessed by the officer at the moment that force is employed.") (citations omitted); *Banks v. Hawkins*, 999 F.3d 521, 525–26 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 2674 (2022) ("In any event, we evaluate the reasonableness of Hawkins's conduct by looking primarily at the threat present *at the time* he deployed the deadly force.") (citation omitted).

[14] *Amador*, 961 F.3d at 727 (quoting *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 728 (5th Cir. 2018)).

[15] 550 U.S. 372, 383 (2007) (cleaned up).

[16] *See id.* at 728 ("Considering the totality of the circumstances, focusing on the act that led the officers to discharge their weapons, and without reviewing the district court's decision that genuine factual disputes exist, *see Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004), we conclude that the genuine issues of material fact identified by the district court are material, and this case should proceed to trial.").

No. 22-20519

circumstances required by *Garner*, including the gravity of the offense at issue.

### III.

Here, given the rapid sequence of events and Officer Felix's role in drawing his weapon and jumping on the running board, the totality of the circumstances merits finding that Officer Felix violated Barnes's Fourth Amendment right to be free from excessive force. This officer stepped on the running board of the car and shot Barnes within two seconds, lest he get away with driving his girlfriend's rental car with an outstanding toll fee. It is plain that the use of lethal force against this unarmed man preceded any real threat to Officer Felix's safety—that Barnes's decision to flee was made before Officer Felix stepped on the running board. His flight prompted Officer Felix to jump on the running board and fire within two seconds. This case should have enjoyed full review of the totality of the circumstances. The moment of threat doctrine is an impermissible gloss on *Garner* that stifles a robust examination of the Fourth Amendment's protections for the American public. It is time for this Court to revisit this doctrine, failing that, for the Supreme Court to resolve the circuit divide over the application of a doctrine deployed daily across this country.